NOTICE

Decision filed 05/09/07. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

NO. 5-06-0077

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

_____

| | | |
|---|---|---|
| TERESA DE BOUSE, Individually and on Behalf of Others Similarly Situated, | ) ) ) | Appeal from the Circuit Court of St. Clair County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 04-L-53 |
| BAYER AG, BAYER CORPORATION, SMITHKLINE BEECHAM CORPORATION, d/b/a GLAXOSMITHKLINE, GLAXOSMITHKLINE PLC, MARCY GRIM, MICHAEL HARVEY DAVIDSON, M.D., and MICHAEL LEVER, | ) ) ) ) ) ) | |
| | ) ) | Honorable Michael J. O'Malley, |
| Defendants-Appellants. | ) | Judge, presiding. |

_____

JUSTICE DONOVAN delivered the opinion of the court:

A class action complaint sounding in consumer fraud was filed in the circuit court of St. Clair County by the plaintiff, Teresa De Bouse, individually and on behalf of all others similarly situated, alleging that Bayer AG, Bayer Corp., SmithKline Beecham Corp., doing business as GlaxoSmithKline, GlaxoSmithKline PLC, Marcy Grim, Michael Harvey Davidson, M.D., and Michael Lever (the defendants) committed common law fraud and violated the Consumer Fraud and Deceptive Business Practices Act (the Consumer Fraud Act) (815 ILCS 505/1 *et seq.* (West 2004)). The St. Clair County circuit court granted the plaintiff's motion to certify the cause as a class action. Subsequently, the circuit court denied the defendants' motion for a summary judgment, but it certified three questions of law for appellate review pursuant to Supreme Court Rule 308(a) (155 Ill. 2d R. 308(a)). The defendants filed a petition for leave to appeal the class certification order pursuant to

1

Supreme Court Rule 306(a)(8) (210 Ill. 2d R. 306(a)(8)), and leave was granted. The defendants filed a separate application, petitioning this court to consider the questions that had been certified by the trial court, and that application was granted. The appeals were consolidated under cause No. 5-06-0077.

A. Jurisdiction & the Class Certification Order

The defendants filed their petition for leave to appeal the class certification order pursuant to Supreme Court Rule 306(a)(8). The plaintiff then moved to dismiss the appeal for a lack of appellate jurisdiction. Initially, this court denied the plaintiff's motion to dismiss and granted the defendants' petition for leave to appeal. After reviewing the record, we determined that it was necessary to revisit the issue of jurisdiction. We have reconsidered the issue of jurisdiction in light of the record, and we have determined that the Rule 306(a)(8) appeal was untimely filed and must be dismissed.

The record shows that a hearing was held on the plaintiff's motion for class certification on July 29, 2005. At the close of the hearing, the circuit court announced that it would take the matter under submission. The circuit court entered a written order stating that the issue was under submission. The parties submitted proposed orders for the court's consideration. On September 1, 2005, the court signed a 12-page order granting certification of the class. The order is contained in the court file. It bears a file stamp of September 2, 2005. The court file also includes a computerized docket sheet that contains an entry dated September 2, 2005, indicating that a 12-page order was entered that date. There is no indication that the order was served personally or by mail on counsel of record.

The record shows that the parties appeared in open court on September 27, 2005, and December 29, 2005, in relation to the summary judgment motion that had been filed in the case. The order entered after the hearing on September 27, 2005, specifically states that all parties appeared by counsel on that date. The parties also appeared for a status conference

2

on January 11, 2006.

On January 25, 2006, the defendants filed a motion to vacate or amend the class certification order *nunc pro tunc* on the grounds that they had not received notice of the entry of the order granting class certification, that the circuit court clerk failed to serve a copy of the order on all parties and failed to note any service in the file as required under Twentieth Judicial Circuit Rule 2.06 (20th Judicial Cir. Ct. R. 2.06 (eff. December 12, 1991)), and that they made diligent efforts to monitor the court file once the motion had been taken under advisement by the court. The defendants asserted that they first became aware that the order had been entered during the status conference on January 11, 2006, that their right to appeal was "severely prejudiced", and that the circuit court had the authority to enter a *nunc pro tunc* order to avoid the prejudice. The defendants attached affidavits from the defendants' attorneys and their staff members. The affidavits outlined the efforts undertaken to monitor the court file.

The plaintiff filed a response in opposition to the defendants' motion for an order *nunc pro tunc*. Therein, the plaintiff stated that her attorneys had obtained a copy of the class certification order by appearing in person at the circuit clerk's office on or about September 5, 2005, and making an inquiry about the status of the class certification motion. The plaintiff attached affidavits from its attorneys and a copy of the computerized docket sheet that revealed an entry of September 2, 2005, referencing a 12-page order.

On January 30, 2006, the court held a hearing on the defendants' motion to vacate or amend the class certification order *nunc pro tunc*. After considering the arguments of counsel, the judge said, "It's only just that I enter an order *nunc pro tunc* if that in some way can protect your right to appeal this thing if that's the right thing to do." The court then entered the following order:

"Defendants' Motion to Vacate or Amend Class Certification Order Nunc Pro

Tunc called and heard. Over plaintiff's objection, said motion is hereby GRANTED. The Court's Order dated September 2, 2005, granting Plaintiff's Motion for Class Certification is hereby vacated nunc pro tunc and amended to be entered January 11, 2006, the date the defendants' [*sic*] received notice of said Order."

The defendants filed their petition for leave to appeal the certification order on February 10, 2006.

Supreme Court Rule 306(a)(8) allows a party to petition for leave to appeal from an order granting or denying the certification of a class action. Supreme Court Rule 306(c) (210 Ill. 2d R. 306(c)) requires the petition to be filed in the appellate court within 30 days after the entry of the order granting or denying certification. The 30-day time limit under Rule 306 is jurisdictional. *Kemner v. Monsanto Co.*, 112 Ill. 2d 223, 236, 492 N.E.2d 1327, 1333 (1986); *Leet v. Louisville & Nashville R.R. Co.*, 131 Ill. App. 3d 763, 765, 475 N.E.2d 1340, 1341-42 (1985). There is no provision for extending the time for filing a petition for interlocutory appeal other than by permission of the reviewing court pursuant to Rule 306(f) (210 Ill. 2d R. 306(f)).

In this case, the certification order was entered on September 2, 2005. By our calculation, the petition for leave to appeal should have been filed no later than Monday, October 3, 2005. The defendants' petition for leave to appeal was not filed until February 10, 2006, and they did not seek permission from this court to file an untimely petition for leave to appeal. In accordance with the time limits set forth in Supreme Court Rule 306, the defendants' petition for leave to appeal was filed out of time. However, the defendants presented a number of legal and equitable arguments to the trial court in support of their motion to vacate or amend the certification order *nunc pro tunc*. We have considered those arguments, and for the reasons discussed below, we have concluded that the defendants have not established any basis for excusing their failure to file the petition for leave to appeal

4

within the 30-day time limit.

The defendants have argued that an order to vacate or amend the certification order *nunc pro tunc* is proper because the circuit clerk's failure to provide notice of the entry of the certification order prejudiced their right to file a petition for leave to appeal. The Illinois Supreme Court has considered and rejected similar arguments. *Mitchell v. Fiat-Allis, Inc.*, 158 Ill. 2d 143, 632 N.E.2d 1010 (1994); *Granite City Lodge No. 272, Loyal Order of the Moose v. City of Granite City*, 141 Ill. 2d 122, 565 N.E.2d 929 (1990).

In *Mitchell v. Fiat-Allis, Inc.*, the trial court signed an order disposing of the case on February 27, 1991. The order was file-stamped March 1, 1991, and included instructions to the circuit court clerk to send a copy of the order to the attorneys of record. Mitchell's attorney first learned of the order on April 25, 1991. After conferring with opposing counsel and the trial court, Mitchell's counsel filed a petition to withdraw or vacate the order. On April 29, 1991, the trial court granted the petition, withdrew the judgment dated February 27, 1991, and reentered the same order, effective April 29, 1991. The appellate court upheld jurisdiction and considered the merits of the appeal. The Illinois Supreme Court reversed, finding that the trial court lacked authority to vacate and reenter its order more than 30 days after it had been entered. The supreme court held that trial courts lacked the authority to excuse compliance with the supreme court rules governing the time for filing a notice of appeal. *Fiat-Allis, Inc.*, 158 Ill. 2d at 150, 632 N.E.2d at 1012.

The supreme court had clearly stated that the parties bear the responsibility to monitor the status of a case and that this responsibility is not lessened where the circuit clerk fails to give notice of the entry of the order. *Granite City Lodge No. 272, Loyal Order of the Moose*, 141 Ill. 2d at 127, 565 N.E.2d at 931; *Fiat-Allis, Inc.*, 158 Ill. 2d at 151, 632 N.E.2d at 1013. Actual notice is not required so long as the order appealed from was expressed publicly, in words, at the situs of the proceeding. *Fiat-Allis, Inc.*, 158 Ill. 2d at 148, 632 N.E.2d at 1012;

*Granite City Lodge No. 272, Loyal Order of the Moose*, 141 Ill. 2d at 123, 565 N.E.2d at 929.

The facts in the case at bar are similar to those in *Fiat-Allis, Inc.* Here, a typewritten order granting class certification was entered into the court file on September 2, 2005, and its entry was noted in the computerized docket. The defendants indicated that they first learned of the order on January 11, 2006, months after the time for filing a petition for leave to appeal had passed. They filed a motion to vacate or amend the certification order *nunc pro tunc* on January 25, 2006. On January 30, 2006, the trial court entered an order vacating *nunc pro tunc* the order entered September 2, 2005, and amended it to be entered January 11, 2006. In our view, the decision in *Fiat-Allis, Inc.* is controlling under the facts of the case, and thus, the trial court lacked authority to vacate and reenter the same order more than 30 days after it had been originally entered in order to excuse compliance with the filing requirements of Rule 306.

The defendants have also asserted that Twentieth Judicial Circuit Rule 2.06 requires the circuit clerk to serve copies of orders on the attorneys of record, that they relied on the circuit clerk to comply with the rule, and that they were prejudiced by the circuit clerk's failure to comply. Local rule 2.06 directs the circuit clerk to serve on all the parties of record, by personal service or by mail, a copy of an order within three days of its entry and to note compliance with the rule in the court file. 20th Judicial Cir. Ct. R. 2.06 (eff. December 12, 1991). Under Supreme Court Rule 21(a) (134 Ill. 2d R. 21(a)), the circuit court is authorized to adopt rules for the orderly disposition of its business. However, local rules may not be construed to modify, limit, abrogate, or otherwise conflict with the Illinois Supreme Court rules and the existing laws of Illinois. See 134 Ill. 2d R. 21(a); *People v. Schroeder*, 102 Ill. App. 3d 133, 137, 429 N.E.2d 573, 577 (1981). We conclude that the trial court had no authority to toll or to extend the time for filing a Rule 306 appeal in order to remedy the circuit clerk's failure to comply with a local administrative rule.

6

Furthermore, the record belies the defendants' assertions that they detrimentally relied on local rule 2.06 and that they were prejudiced by the circuit clerk's noncompliance with the rule. In the pleadings and affidavits filed in the trial court, the defendants detailed the efforts they made to monitor the status of the class certification motion. The defendants' attorneys stated that they assigned paralegals or other staff members to monitor the court file once the court took the class certification motion under advisement. In addition, the defendants' attorneys appeared in open court on September 27, 2005, prior to the running of the 30-day time limit, to argue their summary judgment motion. The record shows that the defendants had ample opportunities to inspect the court file and to ascertain whether an order had been entered on the class certification motion. We find it remarkable and inexplicable that the attorneys did not inquire about the status of the class certification motion when they appeared before the court on September 27, 2005. The steps taken by the defendants to monitor the court file undermine their claims of reliance on the local rule to their detriment.

The defendants claimed that the circuit court has the authority to vacate or amend and to reenter an order to avoid prejudice to the parties. In support of that contention, they cited *Comdisco, Inc. v. Dun & Bradstreet Corp.*, 306 Ill. App. 3d 197, 713 N.E.2d 698 (1999), and *Graves v. Pontiac Firefighters' Pension Board*, 281 Ill. App. 3d 508, 667 N.E.2d 136 (1996).

In *Graves v. Pontiac Firefighters' Pension Board*, the trial court entered an order at the close of the evidence, stating that the case was being taken under advisement and that the court would rule by mail. Subsequently, the trial court ruled on the motion, but through an oversight it did not send copies to the parties. When the oversight was brought to the court's attention, it entered a new order acknowledging its oversight and providing that the earlier order would be final for purposes of appeal as of the date that the new order was mailed. An appeal was taken within 30 days of the new order. In considering whether the appeal had been timely filed for purposes of jurisdiction, our colleagues in the Fourth District held that

7

because the trial court had expressly stated that it would rule by mail, the initial order did not comport with the provisions of the court's pronouncements and it did not become final until mailed by the circuit court. *Graves*, 281 Ill. App. 3d at 516, 667 N.E.2d at 141. The facts and circumstances in *Comdisco, Inc.* are similar to those in *Graves* in that the trial court noted that the appellant had relied on the trial court's standard operating procedure of mailing a copy of the final judgment to the parties and that the court failed to mail the judgment in that case. *Comdisco, Inc.*, 306 Ill. App. 3d at 202, 713 N.E.2d at 700. The case before us is distinguishable from the aforementioned cases on its facts. Here, the trial court did not expressly provide that it would rule by mail, and there is no evidence of a standard operating procedure. As previously noted, the detailed accounts of the actions taken by the defendants to monitor the status of the certification motion belie the claims of detrimental reliance.

As we reviewed this issue, we found it noteworthy that the Fourth District declined to extend the *Comdisco, Inc.* decision to a case where the trial judge did not find that the plaintiff's failure to timely file his notice of appeal was the direct result of the court's not following its usual practice of mailing copies of its docket entries to the parties. *Pappas v. Waldron*, 323 Ill. App. 3d 330, 336, 751 N.E.2d 1276, 1280-81 (2001). The Fourth District also recently questioned whether its decision in *Graves* is consistent with the supreme court rules and *Fiat-Allis, Inc. Berg v. White*, 357 Ill. App. 3d 496, 501, 828 N.E.2d 889, 893 (2005). The few decisions in which a court has employed equitable principles to cure the mistakes of ministerial officers are limited to the specific facts and circumstances presented in those cases. The case at bar is not analogous to those cases.

Although the issue was not raised by the parties, we have also considered the propriety of the "*nunc pro tunc*" order. The purpose of a *nunc pro tunc* order is to correct the record of the judgment, to correct a clerical error or matter of form so that the record conforms to the judgment actually rendered by the court. *Beck v. Stepp*, 144 Ill. 2d 232, 238-39, 579

8

N.E.2d 824, 827-28 (1991); *In re Marriage of Breslow*, 306 Ill. App. 3d 41, 53, 713 N.E.2d 642, 651 (1999). In this case, the trial court judge specifically stated that it would enter a *nunc pro tunc* order "if that in some way can protect [the defendants'] right to appeal this thing if that's the right thing to do." The *nunc pro tunc* order was not issued to conform the order to the ruling actually rendered on September 2, 2005. It was not issued to amend an errant provision in the September 2, 2005, order. Its only purpose was to restart the 30-day appeals clock.

The situation faced by the trial court is similar to that which confronted the trial court in *Fiat-Allis, Inc.* In that case, the Illinois Supreme Court recognized that the circuit court's attempt to assist counsel was understandable and well-intentioned, but errant just the same. *Fiat-Allis, Inc.*, 158 Ill. 2d at 150, 632 N.E.2d at 1012. The supreme court stated, "Attorneys are not excused from following the filing requirements of [the supreme court rules] merely because a judge has recommended a procedural route that lies beyond the judge's authority to travel." *Fiat-Allis, Inc.*, 158 Ill. 2d at 150, 632 N.E.2d at 1013.

In our view, *Fiat-Allis, Inc.* controls the present case. Each party had a responsibility to closely and adequately monitor the progress of its case and the court's rulings in order to ensure that the much-anticipated petition for leave to file the interlocutory appeal was timely filed. That was not accomplished here. The circuit clerk's failure to mail copies of the order of September 2, 2005, to the parties does not excuse the untimely filing of the petition for leave to appeal. The *nunc pro tunc* order was not a valid means by which the circuit court could reenter the exact same order and thereby start a new 30-day period in which to file an interlocutory appeal.

The record clearly shows that the order granting class certification was a part of the court file and available for public inspection. It was also noted in a docket entry. There is no provision for extending the time for filing a petition for interlocutory appeal other than

9

by permission of the reviewing court pursuant to Rule 306(f), and that was not done here. The time for filing the petition for leave to appeal is jurisdictional, and the failure to meet it or to secure a timely extension of time from the appellate court will result in the dismissal of the appeal. Accordingly, we find that the defendants' Rule 306(a)(8) petition for leave to appeal the class certification was untimely filed and that the appeal must be dismissed for a lack of jurisdiction.

## B. The Certified Questions

The defendants have devoted a considerable portion of their arguments on appeal to the circuit court's decision to deny the motion for a summary judgment. We decline to specifically address the issues raised in the summary judgment motion for three reasons. First, the denial of a motion for a summary judgment is interlocutory in nature, and it is not a final, appealable order. See *La Salle National Bank v. Little Bill "33" Flavors Stores, Inc.*, 80 Ill. App. 2d 298, 225 N.E.2d 465 (1967). Second, we limited interlocutory review to the legal issues certified by the trial court. Third, it appears that there are material issues of fact raised in the summary judgment motion about which discovery has not been had. Thus, any review of the underlying order is premature and will not serve the interests of judicial economy.

The trial court concluded that the resolution of the following questions of law could materially advance the disposition of the litigation, and the court certified them for appellate review in accordance with Supreme Court Rule 308(a):

"I. Whether an Illinois consumer who purchases a pharmaceutical product, later withdrawn from the market because it was deemed unsafe, can maintain an action under the Illinois Consumer Fraud Act [citation], even though the pharmaceutical company did not engage in direct communication or advertising to the consumer.

10

II. Whether the Defendants' offering for sale of a product in Illinois is a representation to prospective customers that the product is reasonably safe for its intended purpose such that proof of a Defendants' [*sic*] failure to disclose safety risks associated with the product to consumers is a violation of the Illinois Consumer Fraud Act.

III. Whether fraudulent statements or omissions made by a defendant to third[]parties, other than the consumer, with the intent that they (1) reach the plaintiff[] [and] (2) influence plaintiff's action[,] and (3) [when] plaintiff relies upon the statements to his detriment, can support an action under the Illinois Consumer Fraud Act."

The elements of a claim under the Consumer Fraud Act are as follows: (1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in a course of conduct involving trade or commerce, and (4) actual damage to the plaintiff (5) proximately caused by the deception. 815 ILCS 505/2 (West 2004); *Zekman v. Direct American Marketers, Inc.*, 182 Ill. 2d 359, 373, 695 N.E.2d 853, 860-61 (1998). The questions certified for review seem to be directed toward further defining these elements in a case where the alleged deception is indirect and covert.

The issue of indirect deception was considered by the Illinois Supreme Court in *Shannon v. Boise Cascade Corp.*, 208 Ill. 2d 517, 805 N.E.2d 213 (2004). In *Shannon*, the supreme court stated that proof of the actual deception of a plaintiff is required to establish the proximate cause requirement, but the deception need not always be direct between the defendant and the plaintiff. *Shannon*, 208 Ill. 2d at 525-26, 805 N.E.2d at 218. It is enough that the defendant's deception, whether made directly or indirectly, be committed with the intention that it influence the plaintiff's action and that the plaintiff relied on the deception

11

to her detriment. *Shannon*, 208 Ill. 2d at 526, 805 N.E.2d at 218; *St. Joseph Hospital v. Corbetta Construction Co.*, 21 Ill. App. 3d 925, 954, 316 N.E.2d 51, 72 (1974). In illustrating the concept of "indirect deception", the supreme court proposed a situation where a purchaser who has no independent knowledge of the qualities or expected performance of a siding may be deceived because the manufacturer deceived a person, such as a builder, architect, or contractor, who reasonably should have correct knowledge. *Shannon*, 208 Ill. 2d at 526, 805 N.E.2d at 218.

The Illinois Supreme Court has also recognized that the omission or concealment of a material fact in the conduct of trade or commerce constitutes consumer fraud. *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482, 504, 675 N.E.2d 584, 595 (1996). A material fact exists where a buyer would have acted differently if he had known the information or if the concealed fact concerned the type of information on which a buyer would be expected to rely in making a decision regarding the purchase of the product. *Connick*, 174 Ill. 2d at 505, 675 N.E.2d at 595.

In this case, the deception alleged in the complaint is concealment by silence[1]. This type of deception falls within the coverage and the purpose of the Consumer Fraud Act. *Pappas v. Pella Corp.*, 363 Ill. App. 3d 795, 844 N.E.2d 995 (2006). The defendants submit

---

[1]A similar cause of action was asserted in *Jensen v. Bayer AG*, 371 Ill. App. 3d 682, 862 N.E.2d 1091 (2007). In *Jensen*, a summary judgment was granted for the defendant because the plaintiff failed to submit some evidence on two elements that are necessary to prove a violation of the Consumer Fraud Act, *i.e.*, that the defendant intended to conceal or that the plaintiff was actually deceived by any omission made by the defendant. *Jensen* was decided after the parties had an opportunity for discovery on the merits. Aside from recognizing the existence of a cause of action under similar facts, we do not find *Jensen* to be helpful in regard to our consideration of the certified questions.

12

that the case is governed by a line of decisions in which the Illinois Supreme Court held that deceptive advertising could not be the proximate cause of damages unless the plaintiff was actually deceived by the misrepresentation, and they cite *Avery v. State Farm Mutual Automobile Insurance Co.*, 216 Ill. 2d 100, 835 N.E.2d 801 (2005); *Price v. Philip Morris, Inc.*, 219 Ill. 2d 182, 848 N.E.2d 1 (2005); and *Zekman*, 182 Ill. 2d 359, 695 N.E.2d 853, among others. In the cases relied upon by the defendants, the alleged deceptions arise from affirmative representations, such as specific promises or a deceptive advertisement. In those types of cases, the supreme court has said that in order to establish proximate cause, the plaintiff must allege and show that he was actually deceived by the misrepresentation. *Avery*, 216 Ill. 2d at 200, 835 N.E.2d at 861; *Zekman*, 182 Ill. 2d at 375-76, 695 N.E.2d at 861-62.

There is another line of cases involving concealment by silence. In those types of cases, the courts have found it sufficient where there was proof that the defendant's deception, whether made directly or indirectly, was committed with the intent that it influence the plaintiff's action and that if the plaintiff had known of the concealed information, she would not have purchased the product. *Connick*, 174 Ill. 2d at 504-05, 675 N.E.2d at 595; *Pappas*, 363 Ill. App. 3d at 804-06, 844 N.E.2d at 1003-04.

The contrasts in the aforementioned cases demonstrate that for purposes of satisfying the elements of a cause of action under the Consumer Fraud Act, there is a very fine but significant distinction between cases involving an affirmative deception and a deception by concealment. As to the case at bar, the plaintiff's action falls within the latter category.

Following the reasoning and bases underlying the decisions in *Shannon* and *Connick*, we answer the first and third questions in the affirmative. The second question, as drafted, appears to be a mixed question of fact and law and, therefore, not a proper question under Supreme Court Rule 308. Accordingly, we decline to address it.

C. Summary and Conclusion

13

The Rule 306(a)(8) appeal of the class certification order is hereby dismissed for a lack of jurisdiction. We have answered certified questions I and III in the affirmative. We have determined that certified question II is not a proper question under Supreme Court Rule 308, and therefore we decline to address it. We remand the case to the trial court for further proceedings.

Rule 306(a)(8) appeal dismissed; certified questions answered in part; cause remanded.

CHAPMAN, J., concurs.

PRESIDING JUSTICE WELCH, dissenting:

I respectfully dissent. I believe the circuit court erred in denying the defendants' motion for a summary judgment, and I would reverse that order, granting a judgment in favor of the defendants. Accordingly, I would find it unnecessary to address the issues pertaining to class certification.

An overview of the complaint and its allegations, as well as the defendants' motion for a summary judgment, is necessary for a full understanding of my position. This is a class action seeking money damages for the purchase price paid by the plaintiff for Baycol. According to the first amended complaint, the plaintiff was prescribed, purchased, and used Baycol, a drug manufactured, marketed, promoted, and sold by the defendants. The action is brought on behalf of all individuals who have purchased Baycol but excludes any of those individuals who have or had an action for damages for personal injuries or death suffered as a result of using Baycol. Counts I and III of the first amended complaint are brought pursuant to the Consumer Fraud and Deceptive Business Practices Act (the Act) (815 ILCS

14

505/1 *et seq.* (West 2004)), and count II alleges common law civil conspiracy to commit fraud.

The complaint alleges that the defendants knowingly, intentionally, and/or recklessly concealed from government regulators, the medical community, and consumers known risks and dangers associated with the use of Baycol, while at the same time exaggerating its efficacy, with the intent to cause consumers to purchase Baycol. The plaintiff alleges that the defendants knew of serious risks and dangers associated with the use of Baycol and knowingly and intentionally omitted from their promotional material and advertisements these known risks and dangers. The complaint states that in deciding whether to prescribe, recommend, and purchase Baycol, the medical community, health care insurers, and consumers, including the plaintiff, reasonably relied on these promotional materials and advertisements, which omitted and concealed the known risks and dangers of Baycol. The complaint alleges that had consumers and physicians, including the plaintiff and/or her physician, known of these risks and dangers, they would not have prescribed or purchased Baycol.

Count I alleges that the mere act of offering Baycol for sale as a consumer product is a representation that the product is reasonably safe for its intended purpose and that the defendants knowingly and intentionally concealed the known risks and dangers of Baycol with the intent that the plaintiff purchase Baycol. The complaint alleges that the plaintiff was actually deceived and suffered actual damages in that she spent money to purchase the drug which she would not have spent had she known of the risks and dangers associated therewith. The plaintiff concludes that by their actions, the defendants committed consumer fraud within the meaning of the Act. Count I seeks damages in the amount of the purchase price of the drug.

Count III alleges that by virtue of the concealment of the risks and dangers associated

with Baycol, the defendants were able to charge prices that were far in excess of the fair market value which Baycol would have had but for the concealment and that the defendants knew that the prices charged for Baycol far exceeded its fair market value. The plaintiff alleges that in so acting, the defendants committed one or more unfair acts or practices within the meaning of the Act. Count III seeks damages "in an amount equal to the difference between the price charged for Baycol and the fair market value which Baycol would have had but for [the defendants'] omissions, suppressions, and/or concealments."

Count II alleges common law civil conspiracy based on the above violations of the Act.

The defendants filed a motion for a summary judgment based primarily on the deposition testimony of the plaintiff that prior to purchasing Baycol she had not seen, read, or heard anything about the product and that she had relied solely on her physician's judgment and not on any representation or misrepresentation of the defendants in purchasing the product. Accordingly, the plaintiff was not, and could not have been, actually deceived by any representation, misrepresentation, or concealment by the defendants, and any such deception could not have been the proximate cause of the plaintiff's damages. Additionally, with respect to count III, the defendants argued that the plaintiff's theory of damages, which the defendants call a "market theory" of damages, has been rejected by the Illinois Supreme Court. Finally, with respect to count II, the defendants argued that they are entitled to a summary judgment because civil conspiracy is not an independent tort but must be premised on the commission of an underlying independent wrong, in this case a violation of the Act.

The plaintiff responded that, even if the plaintiff did not see or hear any promotional materials or advertisements for Baycol, the mere act of offering the product for sale is a representation to the plaintiff that it is safe for its intended use, that the defendants knew that this was not true and concealed the true risks and dangers of Baycol, and that the plaintiff

16

relied on the defendants' concealment when purchasing the product. Accordingly, the plaintiff argued, she was actually deceived and this actual deception was the proximate cause of her damages. Furthermore, the plaintiff argued that proximate causation is established based on concealment from medical providers of the true risks and dangers of Baycol, which concealment was intended to, and did, reach the plaintiff. Thus, the plaintiff argued, she was indirectly deceived by the defendants' conduct.

Preliminarily, I would decline to address the questions as identified by the circuit court pursuant to Supreme Court Rule 308(a) (155 Ill. 2d R. 308(a)), finding them to be inapposite. When in its discretion this court allows an appeal under Rule 308, it is not limited to answering the questions that the trial court has identified. *First of America Bank-Illinois, N.A. v. Drum*, 295 Ill. App. 3d 205, 211 (1998). Instead, this court may, pursuant to Supreme Court Rule 366(a)(5) (155 Ill. 2d R. 366(a)(5)), enter any judgment and make any order that ought to have been given or made, and it can make any other and further orders and grant any relief that the case may require. *Drum*, 295 Ill. App. 3d at 211; see also *Schrock v. Shoemaker*, 159 Ill. 2d 533, 537 (1994). In this particular case, I believe that the interests of judicial economy and the need to reach an equitable result oblige this court to go beyond the question of law presented and consider the propriety of the order that gave rise to the appeal. See *Bright v. Dicke*, 166 Ill. 2d 204, 208 (1995). In any event, even if I were to answer the certified questions, I would answer them in the negative and, because the questions are controlling, conclude that the circuit court erred in denying the defendants' motion for a summary judgment.

A summary judgment is proper where the pleadings, affidavits, depositions, admissions, and exhibits on file, when viewed in the light most favorable to the nonmovant, reveal that there is no genuine issue regarding any material fact and that the movant is entitled to a judgment as a matter of law. *Zekman v. Direct American Marketers, Inc.*, 182

Ill. 2d 359, 374 (1998). This court's review of an order denying a summary judgment is *de novo*. *Zekman*, 182 Ill. 2d at 374.

A summary judgment in favor of a defendant is proper when a plaintiff cannot establish an essential element of her cause of action. *Volpe v. IKO Industries, Ltd.*, 327 Ill. App. 3d 567, 577-78 (2002). Although the plaintiff need not prove her case at the summary judgment stage, she must come forward with evidence that establishes a genuine issue of material fact. *Wasik v. Allstate Insurance Co.*, 351 Ill. App. 3d 260, 264 (2004).

Section 10a(a) of the Act (815 ILCS 505/10a(a) (West 2004)) expressly authorizes private causes of action for violations of the Act. It provides, "Any person who suffers actual damage as a result of a violation of [the] Act committed by any other person may bring an action against such person." 815 ILCS 505/10a(a) (West 2004). It is now well-settled that this section requires proof both that "actual damage" was incurred and that the damage was proximately caused by the violation of the Act. See *Oliveira v. Amoco Oil Co.*, 201 Ill. 2d 134, 149 (2002). A summary judgment for the defendant was proper in the case at bar because the plaintiff cannot establish these essential elements of her cause of action.

I begin with count I and the element of proximate cause. A successful claim by a private individual suing under section 10a of the Act (815 ILCS 5/10a(a) (West 2004)) must demonstrate that the fraud complained of proximately caused the plaintiff's injury. *Zekman v. Direct American Marketers, Inc.*, 182 Ill. 2d 359, 373 (1998).

In *Zekman*, a case remarkably similar to the case at bar, the plaintiff filed a class action against AT&T and alleged violations of the Act, after he had received a series of mailings from Direct American Marketers, Inc., indicating that he had won a prize. While it was possible to respond by mail, each mailing urged the recipient to telephone a "900" number to claim the prize. Of course, by calling the "900" number the recipient incurred a charge. This charge and the option to respond by mail were stated in the mailing, although

18

usually in less conspicuous type. The plaintiff made numerous calls to the "900" numbers but won only nominal prizes of discount coupons. AT&T billed the plaintiff for the telephone charges and retained a percentage of each charge for itself; most of each charge went to the direct marketer.

In his deposition, the plaintiff admitted that he knew, prior to placing the calls to the "900" numbers, both that he could have responded by mail and that he would be charged for the calls. Upon placing the calls, the plaintiff was further informed that he would be charged and could hang up immediately without being charged. The plaintiff made at least 24 such telephone calls. The plaintiff's complaint alleged that AT&T obtained money by means of a deceptive practice under the Act.

In its motion for a summary judgment, AT&T argued that the plaintiff's deposition testimony demonstrated that the plaintiff had not been actually deceived by the mailings or the telephone bills and that the plaintiff therefore could not establish that any of AT&T's alleged misconduct had caused him injury. AT&T argued that the plaintiff's deposition testimony established that the conduct complained of was not the proximate cause of any harm, as the Act requires.

In affirming the summary judgment for AT&T, the supreme court pointed out that section 10a(a) of the Act, which governs private causes of action under the Act, mandates that an individual's damages be " 'a result of a violation of [the] Act.' " *Zekman*, 182 Ill. 2d at 373 (quoting 815 ILCS 505/10a(a) (West 1992)). Thus, the Act requires that a successful claim by a private individual suing under the Act demonstrate that the fraud complained of proximately caused the plaintiff's injury. *Zekman*, 182 Ill. 2d at 373. Because the plaintiff's deposition testimony established that he had not been actually deceived by AT&T's conduct and that the conduct complained of was not the proximate cause of his injury, AT&T was entitled to a summary judgment on the claim. Based on the plaintiff's deposition testimony,

19

there was no genuine issue of material fact regarding whether the allegedly deceptive nature of the mailings received by the plaintiff caused him to incur the charges for the "900" number calls. *Zekman*, 182 Ill. 2d at 375. Rather, it appeared that the plaintiff understood the requirements and costs of the program. *Zekman*, 182 Ill. 2d at 375. Based on the testimony by the plaintiff at his deposition, there was no genuine issue of material fact regarding whether the alleged violations of the Act by AT&T proximately caused the plaintiff's damage, for the plaintiff's testimony demonstrated that he had not been deceived by AT&T's actions. *Zekman*, 182 Ill. 2d at 376.

Similarly, the plaintiff's deposition testimony in the case at bar establishes that the conduct complained of was not the proximate cause of her injury. The plaintiff's deposition testimony precludes her from establishing that the alleged misconduct of the defendants proximately caused her damages. The plaintiff testified unequivocally in deposition that in purchasing Baycol she relied exclusively on her physician's advice and that prior to purchasing it she had never heard, read, or seen anything about the product and knew nothing about it. She had never heard, read, or seen any information regarding the effectiveness of Baycol or the presence or absence of any risks or dangers associated with the medication. She was not deceived by the defendants. Based on the testimony of the plaintiff at her deposition, I do not believe that there remains a genuine issue of material fact regarding whether the alleged violations of the Act by the defendants proximately caused her damage, for the plaintiff's testimony demonstrates that she was not deceived by the defendants' actions.

Nevertheless, count I of the plaintiff's complaint alleges that, regardless of whether she ever saw, heard, or read any promotional materials or advertisements about Baycol, the defendants' mere act of selling the drug constitutes a representation that it is safe for its intended purpose and that the plaintiff relied on this false representation in purchasing

20

Baycol. I point out initially that the allegation that the mere act of selling the drug constitutes a representation that it is safe for its intended purpose is a legal conclusion and not an allegation of fact. Accordingly, it need not be accepted as true. See *Kubik v. CNA Financial Corp.*, 96 Ill. App. 3d 715, 719 (1981). In any event, most, if not all, prescription medications carry some risks and dangers. This is why they are available by prescription only. The mere act of selling a prescription medication is not a representation that it is safe for its intended use. Indeed, it may not be safe, but its risks and dangers may be outweighed by the risks and dangers of the medical condition that it is prescribed to treat. The plaintiff simply cannot establish that she was actually deceived by the defendants' conduct and that this deception was the proximate cause of her damages. Accordingly, I believe that the circuit court erred in denying the defendants' motion for a summary judgment on count I.

The defendants are entitled to a summary judgment on count I of the plaintiff's complaint for yet another reason: the plaintiff cannot establish that she suffered "actual damage" as a result of her purchase of Baycol. In order to recover under the Act, a plaintiff must establish that she suffered "*actual damage* as a result of a violation of [the] Act." (Emphasis added.) 815 ILCS 505/10a(a) (West 2004); *Oliveira*, 201 Ill. 2d at 149.

In *Avery v. State Farm Mutual Automobile Insurance Co.*, 216 Ill. 2d 100 (2005), a plaintiff's cause of action under the Act failed in part because he was unable to prove actual damage. That case involved a claim that the defendant had violated the Act by failing to disclose its policy of substituting nonoriginal equipment manufacturer parts for original manufacturer parts when repairing insured vehicles. The supreme court held that the claim of the named plaintiff DeFrank must fail because he failed to allege or prove actual damage. DeFrank testified that, subsequent to repairs made under his insurance contract with State Farm Mutual Automobile Insurance Company in which nonoriginal equipment manufacturer parts were used, he sold his vehicle in an arms-length transaction for what was admittedly

21

the same price he would have received had the vehicle had original equipment manufacturer parts on it. It had made no difference in the value of the vehicle that nonoriginal equipment manufacturer parts had been used in the repair. Accordingly, the plaintiff DeFrank had not suffered actual damage and could not prevail on his claim under the Act.

Similarly, in the case at bar the plaintiff cannot establish that she suffered actual damage as a result of her purchase of Baycol, even if that purchase was in reliance on deceptive conduct by the defendants. The plaintiff purchased and paid for a cholesterol-lowering drug. The complaint does not allege that the plaintiff suffered any personal injury as a result of using the drug, nor does she allege that the drug did not work to lower her cholesterol. If, in fact, the drug lowered the plaintiff's cholesterol without causing any adverse side effects or personal injuries, then the plaintiff got exactly what she paid for: an effective, safe, cholesterol-lowering drug. I note that the plaintiff has asserted her physician/patient privilege (735 ILCS 5/8-802 (West 2004)) with respect to her own medical records. Accordingly, she is unable to prove the essential element of actual damage as a result of her purchase of Baycol, and the defendants were entitled to a summary judgment on count I of the plaintiff's complaint.

I believe that the defendants were also entitled to a summary judgment on count III of the plaintiff's complaint, which also alleged a violation of the Act. Dispositive on this count is the supreme court's decision in *Oliveira v. Amoco Oil Co.*, 201 Ill. 2d 134, 140 (2002). As is *Zekman v. Direct American Marketers, Inc.*, 182 Ill. 2d 359 (1998), *Oliveira* is remarkably similar to the case at bar. In *Oliveira*, the named plaintiff in a class action against Amoco Oil Company (Amoco) complained that Amoco had falsely advertised its premium gasoline as superior to other grades of gasoline, thereby violating the Act. The plaintiff alleged in his complaint that the false advertisements proximately caused him actual damage. The complaint did not allege, however, that the advertisements induced the plaintiff

22

to buy the gasoline or that he was deceived by the ads, nor did it allege that the plaintiff had seen, heard, or read any of the allegedly deceptive advertisements. Instead, the plaintiff alleged that he was damaged because the ads created an artificially inflated price for the gasoline that he purchased. The complaint alleged that these false advertisements increased consumer demand for premium gasoline, allowing Amoco to charge an inflated price, thereby causing actual damage to all purchasers of the gasoline, regardless of whether they were aware of the ads at the time of purchase. The plaintiff advanced what the supreme court referred to as a "market theory" of causation. The deceptive ads increased demand, which drove up the price. All purchasers of the premium gasoline paid an increased price because of the allegedly deceptive ads, regardless of whether they had seen or relied upon the advertisement at issue. As in the case at bar, the remedy sought was the recovery of the difference between the artificially inflated price and the price that would have been paid absent the deception.

In rejecting the plaintiff's theory of causation, the Illinois Supreme Court reaffirmed that in order to prevail on a claim brought under section 10a(a) of the Act, a private individual must plead and prove actual damage proximately caused by the deception. *Oliveira*, 201 Ill. 2d at 149. The court concluded that its decision in *Zekman* controlled. In *Zekman*, the plaintiff's claim failed as a matter of law because he was not actually deceived. *Oliveira*, 201 Ill. 2d at 154. Similarly, in *Oliveira*, the supreme court found that the plaintiff's complaint failed to allege that he was in any manner actually deceived by Amoco's advertisements:

"Plaintiff does not allege that he was, in any manner, deceived by defendant's advertisements. Plaintiff does not allege that he received anything other than what he expected to receive when he purchased defendant's gasoline, *i.e.*, a certain amount of gasoline, with a certain octane level, for the price listed on the pump. Indeed, plaintiff

23

could not allege that defendant's advertisements deceived him or misled him as to what he was receiving when he made his purchase. Because plaintiff does not allege that he saw, heard[,] or read any of defendant's ads, plaintiff cannot allege that he believed that he was buying gasoline which benefitted the environment or improved engine performance." *Oliveira*, 201 Ill. 2d at 154-55.

Similarly, in the case at bar the plaintiff cannot establish that she was, in any manner, deceived by the defendants' conduct. Nor can she establish that she received anything other than what she expected to receive when she purchased the defendants' medication, a medication which was prescribed by her physician and which might very well have effectively worked to lower the plaintiff's cholesterol. The plaintiff admitted that she never saw, heard, or read any information about Baycol prior to purchasing it and that she relied entirely on the advice of her physician in purchasing it. Accordingly, the plaintiff cannot establish that she suffered actual damage proximately caused by the defendants' alleged deception.

A similar decision was reached in *Shannon v. Boise Cascade Corp.*, 208 Ill. 2d 517 (2004). In that case the plaintiffs filed a class action under the Act against the manufacturer of composite siding and alleged that it had deceptively advertised its product. Admissions in all of the plaintiffs' depositions established that none had received any representations regarding the product from the defendant. The complaint did not allege that any named builder, architect, or engineer had received any product literature or that any plaintiff had communicated with any builder, architect, or engineer who had received product literature. The complaint set forth a "market theory" of causation similar to that put forth in *Oliveira*. The circuit court granted the defendant a summary judgment on the basis that the plaintiffs had not been aware of the defendant's advertising and that the claimed damages were not proximately caused by the alleged deceptive advertising.

24

On appeal, the supreme court affirmed the summary judgment in favor of the defendant. The plaintiffs' complaint did not allege that any deceptive advertising had been received by any plaintiff or by any builder, architect, engineer, or other like person somehow connected with a plaintiff. *Shannon*, 208 Ill. 2d at 525. The plaintiffs' market theory of causation had been rejected in *Oliveira* and was similarly rejected here. The advertising had not deceived the plaintiffs and, thus, could not have proximately caused the claimed damages. *Shannon*, 208 Ill. 2d at 525.

Of particular relevance to the case at bar is the supreme court's statement in *Shannon*, 208 Ill. 2d at 525-26, that although proof of actual deception of a plaintiff is required, that is not to say that the deception must always be direct between the defendant and the plaintiff to satisfy the requirement of proximate cause under the Act. The court stated that if the product literature had in fact deceived a particular builder, architect, or contractor, resulting in the installation of defective siding on a home, the damage could arguably have occurred as a result of the indirect deception, as required by the Act. In those circumstances, the purchaser, who might have no independent knowledge of the qualities or expected performance standards of siding, is deceived because of the deception of the builder, architect, or contractor, who reasonably should have had correct knowledge. However, in *Shannon*, the plaintiffs had not pled any facts to support that theory.

Similarly, in the case at bar, the plaintiff has not pled sufficient facts to support a theory that her own physician, who prescribed Baycol for her, had seen, read, or heard any promotional material or advertisements or received any product literature from the defendants and in fact been deceived. Instead, the complaint makes general allegations that the defendants advertised Baycol in publications which physicians commonly read and that those advertisements were misleading or false. The complaint does not allege that the plaintiff's physician received any of those publications, saw the false or misleading

25

advertisements, and was deceived thereby, nor did the plaintiff present any evidence to support this theory in opposition to the motion for a summary judgment. Indeed, it is possible that the plaintiff's physician knew of the risks and dangers associated with the use of Baycol but determined that the risks and dangers associated with the plaintiff's elevated cholesterol outweighed the risks and dangers associated with the drug. Accordingly, the plaintiff can rely on this theory no more than the plaintiffs in *Shannon* could. I believe that the circuit court erred in denying the defendants' motion for a summary judgment on count III.

Finally, count II sounds in common law civil conspiracy, which is not an independent tort but rises or falls with the plaintiff's claims under the Act. See *Indeck North American Power Fund, L.P. v. Norweb PLC*, 316 Ill. App. 3d 416, 432 (2000). Accordingly, a judgment in the defendants' favor on counts I and III must also result in a judgment in the defendants' favor on count II.

Having found that the trial court erred in denying the defendants' motion for a summary judgment and having reversed that order, I would have found it unnecessary to address the issues relating to class certification.

NO. 5-06-0077
IN THE
APPELLATE COURT OF ILLINOIS
FIFTH DISTRICT

| | | |
|---|---|---|
| TERESA DE BOUSE, Individually and on Behalf of Others Similarly Situated, | ) ) ) | Appeal from the Circuit Court of St. Clair County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 04-L-53 |
| BAYER AG, BAYER CORPORATION, SMITHKLINE BEECHAM CORPORATION d/b/a GLAXOSMITHKLINE, GLAXOSMITHKLINE, PLC, MARCY GRIM, MICHAEL HARVEY DAVIDSON, M.D., and MICHAEL LEVER, | ) ) ) ) ) ) ) ) | Honorable Michael J. O'Malley, |
| Defendants-Appellants. | ) | Judge, presiding. |

**Opinion Filed**:       May 9, 2007

**Justices**:       Honorable James K. Donovan, J.,

Honorable Melissa A. Chapman, J.,
Concurs

Honorable Thomas M. Welch, P.J.,
Dissents

**Attorneys for Appellants**       Jeffrey Baron, Blackwell Sanders Peper Martin, LLP, 720 Olive Street, Suite 2400, St. Louis, MO 63101; Stephen C. Carlson, J. Randal Wexler, Charles K. Schafer, Sidley Austin LLP, One South Dearborn Street, Chicago, IL 60603; Andy Goldman, Phillip Beck, Bartlit Beck Herman Palenchar & Scott, 54 West Hubbard, Suite 300, Chicago, IL 60610 (attorneys for Bayer AG, Bayer Corp., Marcy Grim, Michael Lever)

John E. Galvin, Jonathan H. Garside, Fox Galvin, LLC, One Memorial Drive, Eighth Floor, St. Louis, MO 63102 (attorney for SmithKline Beecham Corp., d/b/a GlaxoSmithKline, GlaxoSmithKline PLC)

**Attorney for Appellee**       John J. Driscoll, Brown & Crouppen, P.C., 720 Olive Street, Suite 1800, St. Louis, MO 63101