WILLIAM T. JONES, Plaintiff-Appellant, v. THE CITY OF CARBONDALE, Defendant-Appellee.

Fifth District   No. 5—90—0322

Opinion filed June 25, 1991.

Paul G. Schoen, Michael F. Dahlen, and John S. Rendleman III, all of Feirich/Schoen/Mager/Green, of Carbondale, for appellant.

Patricia S. McMeen, of Gilbert, Kimmel, Huffman & Prosser, Ltd., of Carbondale, for appellee.

JUSTICE CHAPMAN delivered the opinion of the court:

Hill House, Inc., filed an application with the City of Carbondale (City) for a special use permit on May 30, 1989. Thereafter, William Jones filed a petition seeking to invoke the provisions of section 11—13—14 of the Illinois Municipal Code, which provides in pertinent part:

> "In case of a written protest against any proposed amendment of the regulations or districts, signed and acknowledged by *** the owners of 20% of the frontage immediately adjoining *** the frontage proposed to be altered, is [*sic*] filed with the clerk of the municipality, the amendment shall not be passed except by a favorable vote of two-thirds of the aldermen or trustees of the municipality then holding office." (Ill. Rev. Stat. 1989, ch. 24, par. 11—13—14.)

The city council took no formal action on Jones' petition as it determined that section 11—13—14 was inapplicable to the grant of a special use permit. On July 3, 1989, the city council, by a simple majority, adopted a resolution which granted the special use request submitted by Hill House, Inc.

Jones then filed a two-count complaint for declaratory judgment in the circuit court. This appeal concerns the disposition of count I; therefore, we will limit our discussion to that count.

In count I, Jones requested that the court: (1) declare the rights of the plaintiff to invoke the provisions of section 11—13—14 of the Municipal Code; (2) declare the grant of the special use null and void; and (3) enjoin the City of Carbondale from issuing the special use certificate. In its answer to the complaint, the city admitted: (1) that the objection was filed by the requisite percentage of frontage owners; (2) that the city council took no formal action on Jones' petition invoking the two-thirds majority provision of section 11—13—14; and (3) that the city council approved the special use certificate by a vote of three in favor and two opposed.

Thereafter, Jones filed a motion for summary judgment as to both counts of his complaint. The city responded that the granting of the special use was not a violation of either section 11—13—14 of the Municipal Code or section 15—2—95.E of the Carbondale Revised Code because neither section is applicable to a request for a special use permit. The circuit court denied Jones' motion for summary judgment as to counts I and II. Jones thereupon requested a finding of appealable interlocutory order as to count I of his complaint, pursuant to Supreme Court Rule 308 (134 Ill. 2d R. 308). On May 8, 1990, the circuit court entered an order identifying the issue pursuant to Rule 308 as follows:

"Whether the grant of a special use permit for property uses which are not principal permitted uses is an amendment to the regulations or districts as contemplated by Section 11—13—14 of the Municipal Code providing for the requirement of passage by extra ordinary [*sic*] majorities of the zoning authority."

Before reaching the merits of the issue on appeal, we will address two preliminary matters. The first concerns two motions which have been filed in this court by Jones.

One week prior to this cause being heard on oral argument before this court, Jones filed a motion for leave to cite additional authority. In his motion he alleges that the city's brief on appeal raises the issue that the special use granted herein was pursuant to a resolution and not an ordinance. Jones argues that a special use must be granted by an ordinance, and because the grant of a special use in this case was not pursuant to an ordinance, it is void.

The city filed an objection to Jones' motion, and Jones countered with a motion for leave to file a reply to appellee's objection. The city also filed an objection to this motion.

■ Because Rule 308 is an exception to the general rule that only final judgments may be appealed, an appeal under Rule 308 should be limited to the question identified by the trial court. (*May Centers, Inc. v. S.G. Adams Printing & Stationery Co.* (1987), 153 Ill. App. 3d 1018, 1021, 506 N.E.2d 691, 694; *Koch v. Spalding* (1988), 174 Ill. App. 3d 692, 698, 529 N.E.2d 19, 23.) This court should not expand upon the questions brought before us by the trial court in order to answer others which could have been included. (*Getto v. City of Chicago* (1981), 92 Ill. App. 3d 1045, 1048, 416 N.E.2d 1110, 1112-13.) The issue of the form by which a municipality is required to approve a special use permit is outside the scope of the question of law identified by the trial court. Therefore, we deny Jones' motions for leave to cite additional authority and for leave to reply to appellee's objection.

■ Zoning ordinances typically provide three mechanisms to accommodate circumstances for which the generalized ordinance regulatory scheme is imperfect: the variance, zoning amendment, and special use permit. (Connor, *Zoning*, in Illinois Municipal Law ch. 10, §10.16 (Ill. Inst. for Cont. Legal Educ. 1987).) While these tools are similar in that they all deviate from the principal permitted uses of a zoning ordinance, they differ in their scope and purpose.

■ A variance is a grant of relief to an owner from the literal requirements of the ordinance where literal enforcement would cause him undue hardship. (*City of Clinton v. Glasson* (1976), 35 Ill. App. 3d 745, 748, 342 N.E. 229, 231.) It has been recognized that because the special use may have the same impact upon neighboring property as a variance, procedural safeguards similar to those prescribed for variances might be desirable for special uses as well. (*Kotrich v. County of Du Page* (1960), 19 Ill. 2d 181, 187, 166 N.E.2d 601, 605.) However, the supreme court determined that the procedural requirements for variances are not, without legislative directive, imposed upon special uses. See *Kotrich*, 19 Ill. 2d at 188, 166 N.E.2d at 605.

■ An amendment to a zoning ordinance changes or alters the original ordinance or some of its provisions. (*Athey v. City of Peru* (1974), 22 Ill. App. 3d 363, 367, 317 N.E.2d 294, 297.) In the instant case Jones argues that because the special use authorizes use of the property contrary to the ordinance, it is an amendment and the voting requirements attendant to an amendment apply. We disagree.

The ordinance at issue in this case is set forth in section 15—2—24 of the Carbondale Revised Code:

"A. Statement of Intent: This district is created to provide land for purposes devoted primarily to the production of agricultural products such as field crops, livestock, fowl and other conventional agricultural pursuits. Other limited compatible uses are also permitted. This district is also created to assist in the conservation of the natural resources within the jurisdiction of this Article by encouraging practices which will conserve soil ***. Uses not related to agriculture are discouraged. When the public interest will be served and only when a contribution will be made to orderly growth, portions of this district may be rezoned for alternative uses.

B. Permitted Principal Uses and Structures:

1. all agricultural uses
2. cemeteries
3. churches[.]

* * *

C. Permitted Accessory Uses and Structures: Accessory uses and structures customarily incidental to permitted principal uses and on the same parcel, including but not limited to:

    1. market facilities for sale of products grown on the premises

    2. artificial lakes[.]

* * *

D. Special Uses: After a public hearing before the Planning Commission, the City Council may permit as special uses the following uses which are subject to: (a) the 'Procedures' as prescribed in 15—2—57; (b) the lot area, lot width, yards, and height limitations of this district unless specified otherwise in the special use; (c) the performance standards as prescribed in this district for each special use (if any):

    1. commercial agricultural storage operation

    2. commercial fishing, hunting lodge, gun club or related operation

    3. drive-in theater

    4. licensed home or institution which provides for the care or custody or education or welfare of persons, not including hospitals

* * *."

(City of Carbondale, Ill., Revised Code §15—2—24 (1990).) We note that while the "statement of intent" recommends that the zoning district be used primarily for agricultural endeavors, the ordinance provides not only for permitted and accessory principal uses, but also provides for specific special uses.

██ ■ A special use is a permission by the Board to an owner to use his property in a manner contrary to the ordinance provided that the intended use is one of those specifically listed in the ordinance and provided that the public convenience will be served by the use. (*Parkview Colonial Manor Investment Corp. v. Board of Zoning Appeals* (1979), 70 Ill. App. 3d 577, 581, 388 N.E.2d 877, 879, citing *Rosenfeld v. Zoning Board of Appeals* (1958), 19 Ill. App. 2d 447, 450, 154 N.E.2d 323, 325.) As stated in *Parkview*:

"Where *special exception uses* are provided for, they *have their genesis in the ordinance* and the body to which the power of administering them is delegated[ ] must look to the terms of the ordinance itself for the measure of its power." (Emphasis added.) (*Parkview*, 70 Ill. App. 3d at 581, 388 N.E.2d at 879.)

The very nature of a special use, whose origins come from the ordinance itself, is contrasted sharply with the essence of an amendment's nature. A permitted special use authorizes a use of the land pursuant to the existing zoning ordinance. No change or alteration in the ordinance itself is required in order to effect a special use. When the special use was granted in this case, section 15—2—24 of the Carbondale Revised Code was neither altered nor repealed. Rather, the only action necessary was the invocation of that portion of the ordinance which listed the permissible special uses.

■■ Jones points out that the resolution adopted by the city granting the special use requires the applicant to comply with four conditions, none of which are contained within the ordinance. The resolution requires that: (1) the city be given site plan approval; (2) building construction be done in accordance with Illinois and Carbondale building codes; (3) the applicant must connect to city water and sanitary sewer mains; and (4) the applicant must dedicate land to allow for street improvements. Jones argues that the city has clearly amended the zoning regulations by imposing requirements which are not otherwise imposed on other landowners within the zoning district.

The Illinois Municipal Code provides in part that

"[a] special use shall be permitted only upon evidence that such use meets standards established for such classification in the ordinances, and the granting of permission therefor may be subject to conditions reasonably necessary to meet such standards." (Ill. Rev. Stat. 1989, ch. 24, par. 11—13—1.1.)

The ordinance at issue provides that a special use may be permitted subject to:

"(a) the 'Procedures' as prescribed in 15—2—57; (b) the lot area, lot width, yards, and height limitations of this district unless specified otherwise in the special use; (c) the performance standards as prescribed in this district for each special use." (City of Carbondale, Ill., Revised Code §15—2—24(D) (1990).)

We have reviewed the procedures as prescribed in section 15—2—57 of the Carbondale Revised Code and do not find the four conditions imposed upon the special use applicant contrary to the performance standards which are provided in section 15—2—57. Because the plaintiff has otherwise failed to demonstrate how the four conditions imposed upon the special use applicant are not reasonably necessary to meet the standards as provided in the ordinance (Ill. Rev. Stat. 1989, ch. 24, par. 11—13—1.1), we cannot find that the imposition of the conditions constitutes an amendment of the ordinance.

Jones also argues that permitted special uses shown on the official zoning map of the City of Carbondale are amendments because changes to the zoning map may only be made via passage or amendment of an ordinance as provided in the Carbondale Revised Code. The city counters that special uses are noted on the official zoning map as a convenience to the public and do not constitute amendments to the zoning ordinances.

Mr. James Rayfield, a planner with the City of Carbondale, testified at a deposition taken on behalf of the plaintiff that the register of amendments to the official zoning map for the city indicates special uses which are identified on the zoning map. He testified that, although a special use such as the one at bar may appear on the zoning map, the zoning district boundary lines do not change.

■ Section 15—2—9 of the Carbondale Revised Code states that the official zoning map "is the final authority as to the *current zoning status* of land and water areas, buildings, and other structures." (Emphasis added.) (City of Carbondale, Ill., Revised Code §15—2—9 (1990).) This description of the official zoning map for the city imposes no greater requirement than is mandated by the Illinois Municipal Code, which provides:

> "[T]he corporate authorities shall cause to be published no later than March 31 of each year a map clearly showing the existing zoning uses, divisions, restrictions, regulations and classifications of such municipality ***." Ill. Rev. Stat. 1989, ch. 24, par. 11—13—19.

Both the Illinois Municipal Code and the Carbondale Revised Code mandate that zoning uses are to be indicated on the zoning map. When the special use herein was granted, the area remained zoned agricultural. The special use is merely a designated use within the zoned district which is indicated on the official zoning map. Flagging the permitted special uses on the zoning map simply gives notice that a special use is being made of the parcel.

Finally, turning to the Illinois Municipal Code, we find that prior to the amendment of section 11—13—1.1, the courts had construed the statute as allowing the municipal authority the freedom to follow its own rules of procedure in determining a voting requirement for granting a special use. (See *Marquette Properties, Inc. v. City of Wood Dale* (1987), 159 Ill. App. 3d 307, 512 N.E.2d 371.) In *Marquette*, the court found that the statute contained no language regulating the procedure which a city council was to follow in determining whether to grant a special use permit. The court held that be-

cause the statute was silent, the city was free to adopt and follow its own rules of procedure. 159 Ill. App. 3d at 307, 512 N.E.2d at 373.

▪▪ Section 11—3—1.1 provides:

"A special use shall be permitted only after a public hearing *** with prior notice thereof given ***. A special use shall be permitted only upon evidence that such use meets standards established for such classification in the ordinances, and the granting of permission therefor may be subject to conditions reasonably necessary to meet such standards. *In addition, any proposed special use which fails to receive the approval of the commission *** shall not be approved by the corporate authorities except by a favorable majority vote ***; however, the corporate authorities may by ordinance increase the vote requirement to two-thirds ***.*" (Emphasis added.) (Ill. Rev. Stat. 1989, ch. 24, par. 11—13—1.1.)

The italicized portion above was enacted into law on August 30, 1989, which was after the city council granted the special use in this case.

Although a statutory amendment generally is presumed to change the law, if an amendment to an ambiguous statute is enacted soon after a controversy arises as to the interpretation of the statute it amends, the amendment may be construed as a legislative interpretation of the original statute. (*Santiago v. Kusper* (1990), 133 Ill. 2d 318, 329, 549 N.E.2d 1251, 1256.) The amendment to section 11—13—1.1 shortly followed the 1987 *Marquette* decision interpreting the voting requirement imposed in section 11—13—1.1. The amendment to section 11—13—1.1 confirms the legislature's intent not to impose a mandatory two-thirds voting requirement when granting a special use.

In conclusion, we find that the grant of a special use permit for property uses which are not principal permitted uses is not an amendment to the regulations or districts as contemplated by section 11—13—14 of the Municipal Code and does not require passage by extraordinary majorities of the zoning authority.

Affirmed.

LEWIS and GOLDENHERSH, JJ., concur.