(No. 107528.—

TERESA DE BOUSE, Appellee, v. BAYER AG *et al.*, Appellants.

*Opinion filed December 17, 2009.*

Philip S. Beck and Andrew L. Goldman, of Bartlit Beck Herman Palenchar & Scott LLP, and Stephen C. Carlson, J. Randal Wexler and Charles K. Schafer, of Sidley Austin LLP, all of Chicago, and Terry Lueckenhoff and Katherine M. Fowler, of Fox Galvin, LLC, of St. Louis, Missouri, for appellants Bayer AG *et al.*

John E. Galvin and Jonathan Garside, of Fox Galvin, LLC, of St. Louis, Missouri, for appellants GlaxoSmith-Kline & GlaxoSmithKline PLC.

Christopher Cueto, of Belleville, William R. Quinlan, James R. Carroll and Shawn M. Staples, of Much Shelist Denenberg Ament & Rubenstein, P.C., of Chicago, and John J. Driscoll, of Driscoll & Cueto, of St. Louis, Missouri, for appellee.

Lawrence R. Kream, of Chicago, for *amicus curiae* Illinois Trial Lawyers Association.

JUSTICE GARMAN delivered the judgment of the court, with opinion.

Chief Justice Fitzgerald and Justices Freeman, Thomas, Karmeier, and Burke concurred in the judgment and opinion.

Justice Kilbride concurred in part and dissented in part, with opinion.

## OPINION

Plaintiff brought a claim under the Consumer Fraud and Deceptive Business Practices Act (Consumer Fraud Act or Act) (815 ILCS 505/1 *et seq.* (West 2004)). She alleges that the defendant drug manufacturer deceived the medical community and the public at-large by concealing information about negative side effects of the defendant's cholesterol-lowering drug. In this case, we are asked to

review three questions certified in the circuit court of St. Clair County in order to determine whether plaintiff can maintain a claim under the Act.

## BACKGROUND

Plaintiff, Teresa De Bouse, brought this claim representing a putative class of plaintiffs she argues were harmed by defendants. Defendants (collectively, Bayer) are corporations that De Bouse alleges collaborated in manufacturing and promoting sales of a cholesterol-lowering drug called Baycol. Defendants also include two individuals, who De Bouse alleges acted as agents for defendant Bayer Corporation. Baycol was later withdrawn from the market after its use was associated with rhabdomyolysis, a serious medical condition affecting a patient's muscles.

De Bouse began taking Baycol in February 2001, on the recommendation of her doctor. During a deposition, De Bouse testified that she had no independent knowledge of Baycol prior to her doctor's recommendation. She testified she relied on her doctor's recommendation and did not exercise any independent judgment on the decision to begin using the drug.

In all, De Bouse had purchased Baycol three times. Each prescription contained 30 tablets. Baycol was withdrawn from the market in August 2001, roughly six months after it was first prescribed to De Bouse. That same month, De Bouse was notified by her pharmacy that the drug had been withdrawn. De Bouse immediately discontinued her use of Baycol.

Although De Bouse did not allege any damages due to side effects from the drug, she has claimed economic damages. De Bouse argues that Bayer was able to inflate prices for Baycol as a result of its deceptive omissions regarding the potential side effects of the drug.

Bayer filed a motion for summary judgment, arguing that in order to maintain an action under the Act,

De Bouse is required to demonstrate that she was actually deceived. The circuit court denied Bayer's motion. However, the circuit court did certify three questions for interlocutory review under Supreme Court Rule 308 (155 Ill. 2d R. 308(a)).

The three certified questions are as follows:

"I. Whether an Illinois consumer who purchases a pharmaceutical product, later withdrawn from the market because it was deemed unsafe, can maintain an action under the Illinois Consumer Fraud Act, even though the pharmaceutical company did not engage in direct communication or advertising to the consumer.

II. Whether the Defendants [sic] offering for sale of a product in Illinois is a representation to prospective customers that the product is reasonably safe for its intended purpose such that proof of a defendants' [sic] failure to disclose safety risks associated with the product to consumers is a violation of the Illinois Consumer Fraud Act.

III. Whether fraudulent statements or omissions made by a defendant to third parties, other than the consumer, with the intent that they (1) reach the plaintiff and (2) influence plaintiff's action and (3) plaintiff relies upon the statements to his detriment, can support an action under the Illinois Consumer Fraud Act."

Upon certification of these three questions, Bayer filed an interlocutory appeal pursuant to Rule 308.

Bayer also filed a petition for leave to appeal the circuit court's class certification order under Supreme Court Rule 306 (210 Ill. 2d R. 306(a)(8)). The circuit court originally signed an order granting class certification on September 1, 2005. The order bears a file stamp dated September 2, 2005. Bayer claims to not have discovered the existence of the September 2 order until January 11, 2006, when the circuit court held a status hearing. Bayer asserted in the circuit court that because of the clerk's failure to serve it with a copy of the September 2 order, its right to appeal was prejudiced. Bayer asked the court to vacate or amend the class

certification order *nunc pro tunc* in order to preserve its right to appeal. The circuit court granted Bayer's motion and entered an order which both vacated the class certification order, and amended it to be entered as of January 11, 2006, the date upon which Bayer claims first to have been made aware of the order. Bayer filed its appeal with respect to the class certification order on February 10, 2006.

Bayer's two petitions for appeal were consolidated in the appellate court. In a published opinion, the appellate court answered the first and third questions in the affirmative. *De Bouse v. Bayer AG*, 373 Ill. App. 3d 774, 785 (2007). The court declined to answer the second question, as the court concluded the question involved factual matters not appropriate for interlocutory review under Rule 308. *De Bouse*, 373 Ill. App. 3d at 785. Regarding the Rule 306 petition, the appellate court concluded that it lacked jurisdiction over Bayer's appeal, as Bayer failed to timely file its petition. The court concluded the circuit court lacked authority to vacate and reenter the same order more than 30 days from the original order in an effort to excuse compliance with the supreme court rules. *De Bouse*, 373 Ill. App. 3d at 779.

After the appellate court filed its opinion, Bayer petitioned this court for leave to appeal. We denied Bayer's petition, but entered a supervisory order instructing the appellate court to vacate its judgment and reconsider in light of *Barbara's Sales, Inc. v. Intel Corp.*, 227 Ill. 2d 45 (2007). The appellate court then filed a second judgment, again answering the first and third certified questions in the affirmative, declining to address the second question, and concluding that Bayer's appeal of the class certification order was untimely filed. 385 Ill. App. 3d 812, 820, 826-27.

Bayer again sought leave to appeal in this court, which we allowed pursuant to Supreme Court Rule 315

(210 Ill. 2d R. 315(a)). For the reasons that follow, we answer the first and second questions in the negative. We answer the third question in the affirmative. Lastly, we vacate the circuit court orders certifying the class and denying Bayer's motion for summary judgment, and enter summary judgment in favor of Bayer.

## ANALYSIS

### A. The Certified Questions

Our review of the appellate court's ruling on certified questions is governed by Rule 308. We limit our review to the certified questions, which, as questions of law, we review *de novo. Barbara's Sales, Inc.*, 227 Ill. 2d at 57-58. However, once we have answered the certified questions, in the interests of judicial economy and the need to reach an equitable result, we will consider the propriety of the circuit court order that gave rise to these proceedings. *Vision Point of Sale, Inc. v. Haas*, 226 Ill. 2d 334, 354 (2007).

De Bouse's first amended complaint alleges a violation of the Act. A Consumer Fraud Act claim requires (1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in a course of conduct involving trade or commerce, and (4) actual damage to the plaintiff that is (5) a result of the deception. See *Zekman v. Direct American Marketers, Inc.*, 182 Ill. 2d 359, 373 (1998).

That the plaintiff must prove that actual damages were suffered "as a result" of the deceptive act imposes an obligation on the plaintiff to prove the deceptive act proximately caused any damages. *Oliveira v. Amoco Oil Co.*, 201 Ill. 2d 134, 149 (2002). In its motion for summary judgment, Bayer argued that De Bouse could not prove that she suffered actual damages as a result of Bayer's alleged deception. Bayer is, in effect, asserting

that De Bouse cannot demonstrate proximate cause. Bayer's motion for summary judgment argued that De Bouse must prove she was "actually deceived," but that as a result of her deposition testimony, she cannot do so. In that testimony, she acknowledged that she saw no advertising for Baycol and knew nothing of the drug prior to her doctor's providing her with a prescription.

De Bouse argues that a plaintiff need not receive a communication from the defendant to maintain a consumer fraud action when the deception results from the defendant failing to disclose material facts, or, in other words, committing deception by concealment. Further, De Bouse contends that the Consumer Fraud Act supports a claim of "indirect deception." According to De Bouse, indirect deception is actionable when the defendant makes fraudulent statements or omissions to a third party with the intent that the statements or omissions (1) reach the plaintiff, (2) influence the plaintiff's action, and (3) in fact cause plaintiff's reliance to plaintiff's detriment. De Bouse's arguments on this point resulted in the circuit court certifying questions I and III.

We first address what the circuit court certified as question I. To begin, we note that this question appears similar to the third certified question. However, based on the arguments of the parties, we conclude that question I addresses a different issue. Question I asks whether a plaintiff may recover when no communication from the defendant reaches the plaintiff, whether directly or indirectly, and when the defendant withholds material information from consumers. To avoid confusion with the discussion of question III, we will frame our discussion of question I in these terms. On this question, Bayer argues that this court's precedent requires actual deception of the plaintiff to maintain a consumer fraud cause of action. Bayer relies on *Oliveira, Barbara's Sales, Inc., Avery v. State Farm Mutual Automobile Insurance Co.*,

216 Ill. 2d 100 (2005), and *Shannon v. Boise Cascade Corp.*, 208 Ill. 2d 517 (2004).

De Bouse in turn primarily relies on *Connick v. Suzuki Motor Co.*, 174 Ill. 2d 482 (1996). She argues that because her claim is based upon an omission and concealment by Bayer, she need not have received any communication to maintain an action. De Bouse attempts to distinguish the cases cited by Bayer, suggesting that each of those cases addressed affirmative representations rather than omissions.

We first consider the line of cases upon which Bayer relies, beginning with *Oliveira*. In that case, the plaintiff brought a consumer fraud claim against the defendant oil company, alleging that the advertisements for its premium gasoline touted certain environmental benefits and high performance qualities, yet omitted material facts and were false and misleading. *Oliveira*, 201 Ill. 2d at 138-39. The plaintiff alleged that the gasoline was in actuality no better than other, nonpremium gasolines. However, the plaintiff admitted that the advertisements did not induce him to purchase the defendant's gasoline, and did not claim that he himself had ever seen or heard the allegedly deceptive advertisements. *Oliveira*, 201 Ill. 2d at 140.

The plaintiff in *Oliveira* alleged that consumers, such as himself, who did not see the advertisements were nonetheless harmed because the advertisements allowed the oil company to inflate the cost of its product far above what it could have charged had the advertisements not concealed material facts and misled consumers. We referred to the plaintiff's theory as a "market theory" of causation (*Oliveira*, 201 Ill. 2d at 140) and rejected it, holding instead that the complaint must be dismissed because it failed to allege that the plaintiff was deceived by the advertisement (*Oliveira*, 201 Ill. 2d at 155).

Next, in *Shannon*, plaintiff purchasers of homes built with a particular type of composite wood siding brought a claim under the Act against the manufacturer of the siding. Plaintiffs claimed that the manufacturer made deceptive statements within its promotional materials as to the siding's quality and durability and its comparability to natural wood siding. *Shannon*, 208 Ill. 2d at 520. This court held that the plaintiffs' theory, which relied on an "alleged deception of unspecified persons having no demonstrated connection to their homes or to themselves," was not actionable. *Shannon*, 208 Ill. 2d at 528. Any possible deception was too remote from the plaintiffs' damages to satisfy proximate cause. *Shannon*, 208 Ill. 2d at 525. As in *Oliveira*, the plaintiffs were not deceived by any advertisements. Thus, any advertisements could not have proximately caused any damages. *Shannon*, 208 Ill. 2d at 525.

Likewise, in *Avery*, plaintiff insurance customers alleged, *inter alia*, that the insurance company deceived them with respect to its use of certain replacement parts in the repair of their vehicles. This court recognized that "the important legal principle," as established by *Oliveira* and *Shannon*, is that "in a case alleging deception under the Act, it is not possible for a plaintiff to establish proximate causation unless the plaintiff can show that he or she was, 'in some manner, deceived' by the misrepresentation." *Avery*, 216 Ill. 2d at 200.

Most recently, in *Barbara's Sales, Inc.*, the plaintiff consumers attempted to bring a consumer fraud claim against a computer processor company that had advertised its newest processors as the best and fastest on the market. Specifically, the plaintiffs alleged that the defendant's marketing strategy was intended to make consumers believe the newest chip was superior to its previous models.

Unlike the plaintiff in *Oliveira*, the plaintiff in *Barbara's Sales* remembered seeing advertisements about the processors. However, she could not recall any particular advertisement. She indicated she relied on the processor's label as an indication that it was newer and better, as it, the "Pentium 4" had a higher number than the older model, the "Pentium III." *Barbara's Sales, Inc.*, 227 Ill. 2d at 54.

We concluded the label alone could not be considered an actionable statement. *Barbara's Sales, Inc.*, 227 Ill. 2d at 74. Further, with respect to other alleged statements by the defendant, we reaffirmed *Oliveira*'s holding that plaintiffs in a class action must prove that "each and every consumer who seeks redress actually saw and was deceived by the statements in question." *Barbara's Sales, Inc.*, 227 Ill. 2d at 76. Because the plaintiffs could not demonstrate that they were, as a class, deceived by such statements, the class certification was reversed. *Barbara's Sales, Inc.*, 227 Ill. 2d at 76.

The basic principle in each of the foregoing cases is that to maintain an action under the Act, the plaintiff must actually be deceived by a statement or omission that is made by the defendant. If a consumer has neither seen nor heard any such statement, then she cannot have relied on the statement and, consequently, cannot prove proximate cause.

De Bouse's reliance on *Connick* to distinguish these cases is misplaced. In that case, the plaintiff car buyers claimed that Suzuki misrepresented the potential safety risks of a "rollover" while driving its "Samurai" model. *Connick*, 174 Ill. 2d at 502. The plaintiffs alleged the company knew of the dangers but never disclosed this information to consumers in its advertising. This court concluded that the plaintiffs adequately pled a consumer fraud violation, recognizing that consumer fraud may occur by concealment. *Connick*, 174 Ill. 2d at 504-05.

Indeed, the Act itself references omissions and concealment as actionable. However, in *Connick*, the plaintiffs received communications from Suzuki, through a car review piece within "Car & Driver" magazine for which Suzuki provided misleading information. *Connick*, 174 Ill. 2d at 503. Viewed in this context, it is clear that the plaintiffs in *Connick* relied not on a "market theory" of causation, but on direct statements from Suzuki that contained both misleading statements and material omissions.

In the present case, De Bouse has not alleged any similar statements or communication from Bayer. Indeed, De Bouse has acknowledged that she did not rely on any statements from Bayer in purchasing Baycol. Further, all of the cases cited by Bayer and discussed above were decided after *Connick*, yet we have consistently rejected the market theory of causation. Thus, even assuming *arguendo* that one could give *Connick* the interpretation that De Bouse suggests, none of this court's precedent has done so. Instead we have repeatedly emphasized that in a consumer fraud action, the plaintiff must actually be deceived by a statement or omission. If there has been no communication with the plaintiff, there have been no statements and no omissions. In such a situation, a plaintiff cannot prove proximate cause. We therefore answer the first certified question in the negative. A consumer cannot maintain an action under the Illinois Consumer Fraud Act when the plaintiff does not receive, directly or indirectly, communication or advertising from the defendant.

Turning now to the third certified question, we note that it reflects De Bouse's argument that a consumer fraud claim may be brought under an "indirect deception" theory.

De Bouse has argued that *Shannon* compels an answer in the affirmative. De Bouse relies on a discus-

sion in *Shannon* that followed the holding that any deception within the manufacturer's promotional literature was too remote from the damages to satisfy the element of proximate cause. There, this court concluded that an alleged deception need not always be direct between the defendant and the plaintiff. Instead, " '[i]t is enough that the statements by the defendant be made with the intention that it reach the plaintiff and influence his action and that it does reach him and that he does rely upon it, to his damage.' " *Shannon*, 208 Ill. 2d at 526, quoting *St. Joseph Hospital v. Corbetta Construction Co.*, 21 Ill. App. 3d 925, 954 (1974).

Bayer does not dispute that *Shannon* identified certain circumstances under which an individual may recover under a theory of indirect deception. Bayer argues instead that De Bouse cannot prove such a theory in this case. That issue, however, is separate from the issue presented in the certified question, which asks only whether a theory of indirect deception is recognized under the Consumer Fraud Act, and which we answer in the affirmative.

We next turn to the question that the circuit court certified as question "II." Again, that question asks whether the act of offering a product for sale in Illinois is a representation that the product is reasonably safe for its intended and ordinary use, such that a failure to disclose risks is a violation of the Act. De Bouse argues that offering a prescription drug for sale is itself a statement upon which may be based a consumer fraud claim.

The appellate court determined that this question presented a mixed question of fact and law not suitable for review under Rule 308, but did not elaborate on this point. The question, as presented, does appear to be specific to Bayer's conduct in this case. The question begins by asking whether "the Defendants [*sic*]" offering

of a product is a representation that the product is safe. However, later in the question it refers to "a defendants' [sic]" failure to disclose. If the certified question was intended to specifically address Bayer's conduct, we would have to agree that the question, at least in part, would involve a factual inquiry. However, we read the question to be addressed to the actions of defendants, in general, who are marketing their products. Therefore we conclude it is a question of law properly certified under Rule 308 and proceed in answering it.

We do note, however, that the answer to the second question, as certified, may depend on the nature of the product being sold. Answering the question as certified, addressing the broad label "product" would require substantial analysis beyond the scope of this litigation and would not materially advance the ultimate termination of this litigation. The present case involves a particular type of product, a prescription medication. Therefore, we limit our consideration of the question to whether offering prescription drugs for sale in Illinois is a representation that the drug is safe for its intended use.

On this question, Bayer argues that the Restatement (Second) of Torts offers a long-settled rule that "[t]here are some products which, in the present state of human knowledge, are quite incapable of being made safe for their intended and ordinary use. These are especially common in the field of drugs." Restatement (Second) of Torts §402A, Comment *k*, at 353 (1965). Comment *k* offers an exception to the general rule making a seller strictly liable even when the product was properly prepared. This court has previously recognized section 402A of the Second Restatement of Torts and the exception found in comment *k*, including a recognition that prescription drugs may be "unavoidably unsafe." *Kirk v. Michael Reese Hospital & Medical Center*, 117 Ill. 2d

507, 517 (1987). *Lawson v. G.D. Searle & Co.*, 64 Ill. 2d 543, 550-51 (1976).

The question in this case is not whether Bayer should be strictly liable for an alleged defect in its product. Rather, the issue here is whether the mere selling of a product constitutes an actionable statement under the Consumer Fraud Act if a plaintiff can prove the defendant concealed material facts. Nonetheless, we find comment *k* instructive in this context as well.

The risks associated with pharmaceuticals are a large part of the reason why a doctor's prescription is required for these medications. A drug often can affect different patients differently, causing adverse side effects in one but not another. The Restatement approach reflects the reality that even in their intended and ordinary use, prescription drugs may nonetheless cause harmful side effects in some patients. A drug manufacturer cannot say with complete certainty that its product, when used as intended, will be reasonably safe for all patients. As a result, the mere sale of a prescription medication cannot be a representation which serves as the basis for a consumer fraud claim. Consequently, we answer the second certified question in the negative.

### B. Underlying Circuit Court Orders

Having answered the certified questions, in the interests of judicial economy and the need to reach an equitable result we next consider the propriety of the circuit court order that gave rise to these proceedings. *Vision Point of Sale, Inc.*, 226 Ill. 2d at 354. In this case, the circuit court denied Bayer's motion for summary judgment, which was premised on the court's belief that De Bouse may have properly pled a consumer fraud cause of action. Denying the motion for summary judgment also allowed the circuit court to certify the foregoing questions, which would conclusively determine whether De Bouse did in fact properly plead a cause of action.

In reviewing the circuit court's denial of summary judgment, however, we conclude that De Bouse did not sufficiently plead a consumer fraud cause of action. As the answers to the first and third certified questions demonstrate, in order to prevail De Bouse must prove that she was actually deceived, either directly or indirectly. De Bouse acknowledged in her deposition testimony that before she began taking Baycol she had seen no advertisements for the drug and had no independent knowledge of the drug or its effects. Therefore, she was not directly deceived by Bayer.

Nonetheless, De Bouse asserts she can still succeed under a theory of indirect deception, that theory which we acknowledged in answering the third certified question. Bayer again argues that even under a theory of indirect deception, De Bouse has not alleged a cause of action. To resolve this we once again turn to *Shannon.*

Although we recognized a theory of indirect deception in *Shannon,* we concluded, nonetheless, that the plaintiffs in that case could not prevail. As in this case, the *Shannon* plaintiffs failed to allege that they were directly deceived. Rather, their claim rested on the siding manufacturer having made deceptive statements in promotional materials that none of the plaintiffs had relied on in purchasing their homes.

Nor could the *Shannon* plaintiffs establish that they had been indirectly deceived. Although they alleged that the siding manufacturer had made fraudulent representations to the builders, and that those misrepresentations had been passed on from the builder to home buyer, the plaintiffs could not demonstrate that the manufacturer's misrepresentations had been seen by, or deceived, any particular builder. Instead, plaintiffs relied on "an alleged deception of unspecified persons having no demonstrated connection to their homes or to themselves." *Shannon,* 208 Ill. 2d at 528. Unable to prove either direct

or indirect deception, this court, therefore, recognized that the plaintiffs' theory was "nothing more than the market theory this court specifically rejected in *Oliveira." Shannon*, 208 Ill. 2d at 528.

In this case, De Bouse similarly fails to allege that her particular doctor was actually deceived by any of Bayer's advertisements or statements. What she does allege is the general deception of "consumers, the medical community, the health care insurance industry, and the public." As in *Shannon*, De Bouses alleges the deception of unspecified persons having no demonstrated connection to her. As such, De Bouse's claim is likewise based on the market theory that this court has consistently rejected. Therefore, we hold that the circuit court erred in denying Bayer's motion for summary judgment, and the order to that effect must be vacated.

Further, because we hold that summary judgment should have been granted in favor of Bayer, we need not address whether Bayer's appeal of the class certification order was filed timely. Class certification is not proper when the putative class representative cannot adequately represent the class sought to be certified. *Wheatley v. Board of Education of Township High School District 205*, 99 Ill. 2d 481, 486 (1984). A representative cannot adequately represent a class when the representative does not state a valid cause of action. *Wheatley*, 99 Ill. 2d at 486. As noted above, De Bouse cannot maintain a cause of action against Bayer. Thus, De Bouse is no longer an appropriate representative of the putative class, and as a result the order of the circuit court certifying the class must also be vacated.

## CONCLUSION

We answer the first certified question in the negative. We also answer the second question, as we have framed it, in the negative. We answer the third certified question in the affirmative. Lastly, we hold that the

circuit court erred in denying Bayer's motion for summary judgment, and as a result conclude that the class certification order was improperly granted. Therefore, we reverse the judgment of the appellate court, vacate the circuit court's class certification order, vacate the circuit court order denying summary judgment, and remand this cause to the circuit court with directions that it enter summary judgment in favor of defendants.

*Certified questions answered;*
*appellate court judgment reversed;*
*circuit court judgment vacated;*
*cause remanded with directions.*

JUSTICE KILBRIDE, concurring in part and dissenting in part:

I agree with the majority's answers to the three certified questions on appeal, as framed in the opinion. I write separately, however, to suggest that the better result in this case would be to remand the cause to the trial court rather than to review the propriety of that court's denial of the defendants' motion for summary judgment. While I do not dispute this court's authority to conduct the review, I believe the more measured and equitable approach would allow the parties to use our answers to the certified questions to determine for themselves the future direction of this cause of action.

The questions certified by the trial court are the primary focus of this appeal. Under Supreme Court Rule 308(a) (155 Ill. 2d R. 308(a)), a trial court may certify "a question of law as to which there is substantial ground for difference of opinion" if it finds "that an immediate appeal from the order may materially advance the ultimate termination of the litigation." Our review of an interlocutory appeal under Rule 308 "is ordinarily limited to the question certified by the circuit court." *Townsend v. Sears, Roebuck & Co.*, 227 Ill. 2d 147, 153 (2007). Although courts have sometimes addressed the

propriety of orders giving rise to the certified question, they have widely acknowledged the applicability of this general rule and narrowly applied any exceptions. *Giangiulio v. Ingalls Memorial Hospital*, 365 Ill. App. 3d 823, 829 (2006) (stating that review is "strictly limited to the certified question presented" and noting that "[w]ith rare exceptions, we do not expand the question under review to answer other, unasked questions," limiting its task " 'to answer the certified questions rather than to rule on the propriety of any underlying order' "), quoting *Fosse v. Pensabene*, 362 Ill. App. 3d 172, 177 (2005); *Hudkins v. Egan*, 364 Ill. App. 3d 587, 590 (2006) (recognizing the scope of review "is ordinarily limited to the question certified" and that "[g]enerally, our jurisdiction is limited to considering the question certified and we cannot address issues outside that area"); *Adams v. Harrah's Maryland Heights Corp.*, 338 Ill. App. 3d 745, 747 (2003); *Johnson v. State Farm Mutual Automobile Insurance Co.*, 323 Ill. App. 3d 376, 379 (2001); *McGurk v. Lincolnway Community School District No. 210*, 287 Ill. App. 3d 1059, 1062-63 (1997) (declining to address the question of willful and wanton conduct as outside the certified question); *McMichael v. Michael Reese Health Plan Foundation*, 259 Ill. App. 3d 113, 116 (1994) (explaining that, due to Rule 308's grant of "an exception to the general rule that appeal may be had only from final judgments," "the appeal must be strictly limited to the question certified by the trial court" and the reviewing court "should not expand upon the question to answer other issues that might have been included"); *Kincaid v. Smith*, 252 Ill. App. 3d 618, 622-23 (1993) (declining to exercise jurisdiction under Rule 308 because the rule should be "strictly construed and sparingly exercised").

Although the majority cites *Vision Point* to support its review of matters beyond the scope of the certified

question (235 Ill. 2d at 550), it fails to note that in *Vision Point* we also declined to address other proposed issues because they "[fell] outside the proper scope of our review of the certified question." *Vision Point*, 226 Ill. 2d at 358. Notably, we cited with approval *Jones v. City of Carbondale*, 217 Ill. App. 3d 85, 88 (1991), for the latter proposition. *Vision Point*, 226 Ill. 2d at 358.

In *Jones*, the court explained that "[b]ecause Rule 308 is an exception to the general rule that only final judgments may be appealed, an appeal under Rule 308 should be limited to the question identified by the trial court." *Jones*, 217 Ill. App. 3d at 88. In addition to denying the plaintiff's motions seeking leave to cite additional authority and to reply to objections, the court refused to examine any issues outside the scope of the certified question. *Jones*, 217 Ill. App. 3d at 88. Even more critical to the proper resolution of the instant case, however, the *Jones* court did *not* address the propriety of the denial of the plaintiff's motion for summary judgment that gave rise to the certified question, contrary to the majority in this case. *Jones*, 217 Ill. App. 3d at 88. I believe similar restraint is justified in the instant case.

Although this court has sometimes reviewed the propriety of the trial court order giving rise to the appeal of a certified question, it has always done so "in the interests of judicial economy *and* the need to reach an equitable result." (Emphasis added.) *Vision Point*, 226 Ill. 2d at 354. Rather than examine the issue of equity, however, the majority simply concludes that judicial economy and equity require it to address the denial of the defendant's summary judgment motion. 235 Ill. 2d at 550, 558. While judicial economy is undoubtedly advanced whenever a ruling is reviewed on interlocutory appeal, particularly where, as here, the ruling on review is dispositive of the entire case, it is not enough to justify the majority's review of the summary judgment ruling

here; equity must also be considered. In this instance, equity is not materially advanced by this court's reversal of the denial of summary judgment for the defendants. Indeed, due to the circumstances underlying these certified questions, equity calls on this court to endow the parties and the trial court with the opportunity to develop this case in an enlightened manner on remand by clarifying the relevant pleading standards.

Until today's decision, *Shannon*'s recognition of the theory of indirect deception under the Act had been questioned and challenged as merely nonbinding *dicta* because *Shannon* concluded the allegations in the complaint failed to allege actual deception sufficiently. See *Shannon*, 208 Ill. 2d at 527-28. Today's decision, however, overcomes any lingering doubt about the validity of a plaintiff's reliance on an indirect deception theory in an action brought under the Act. The decision firmly acknowledges this court's prior adoption, as well as the continuing viability, of the theory of indirect deception. 235 Ill. 2d at 556. Nonetheless, the perception that the indirect deception theory had not yet been definitively accepted by this court appears to have prompted the trial court's decisions both to deny the defendants' summary judgment motion and to certify the questions before this court. Thus, the prior actions of both the parties and the trial court were based on their lack of a firm understanding of the applicable law, unaided by this court's current guidance. Surely, equity is not advanced by this court's premature reversal of the denial of summary judgment. That resolution immediately cuts off the plaintiff's cause of action, depriving both the trial court and the parties of the opportunity to develop the issues in this case while fully informed of the relevant law and pleading requirements.

For this reason, I believe the most equitable resolution of this matter would be to remand the cause to the

trial court for further proceedings. There, the parties could use our answers to the certified questions to shape their next procedural steps, whether they be amendment of the complaint, filing of another motion for summary judgment or dismissal, or an entirely different course of action. See *Bajwa v. Metropolitan Life Insurance Co.*, 208 Ill. 2d 414, 436 (2004) (granting "the plaintiff the opportunity to amend the complaint to cure the defect on remand in spite of the failure to seek leave to amend in the first instance in the trial court"). Whatever their choice, the strategic decision of how best to proceed should belong to the parties, not this court, based on our clarification of the applicable law. Thus, I believe equity favors remanding the cause to the trial court for further proceedings initiated by the parties rather than reviewing the prior summary judgment ruling before the parties have been able to orchestrate their cases to best serve their own purposes.