2026 IL App (1st) 250326

SECOND DIVISION
March 17, 2026

No. 1-25-0326

| | |
|---|---|
| DAVID PAULINSKI, as the Administrator of the Estate of Madalyne Lattuca, Deceased, | ) Appeal from the ) Circuit Court of ) Cook County. |
| Plaintiff-Appellee, | ) ) |
| v. | ) No. 2024-L-241 ) |
| LAURA LINK, SYLVESTER FULCHER, VONZI ANDERSON, FLORA AMEZUCA, KRISTIN TEMPLE, MICHAEL ENU-ENWOSU, STACY SLOAN, CANDACE WILLIAMS, ARIANA ACEVEDO, TAMMY BROWN-ZIELKE, ELIZABETH COLLIER, MICHAEL CASEY, OLUBUNMI ODUTOLA, JOHNNIE GULLET-DIAZ, and CHRISTINE PAULINSKI, | ) ) ) ) ) ) ) ) |
| Defendants, | ) ) |
| (Laura Link, Sylvester Fulcher, Vonzi Anderson, Flora Amezuca, Kristin Temple, Michael Enu-Enwosu, Stacy Sloan, Candace Williams, Ariana Acevedo, Tammy Brown-Zielke, Elizabeth Collier, Michael Casey, and Olubunmi Odutola, | ) ) ) ) ) Honorable ) Maire Dempsey, |
| Defendants-Appellants). | ) Judge, Presiding. |

JUSTICE D.B. WALKER delivered the judgment of the court, with opinion.
Presiding Justice Van Tine and Justice Ellis concurred with the judgment and opinion.

**OPINION**

¶ 1                                     I. BACKGROUND

¶ 2       In January 2022, Madalyne Lattuca died at the age of 15, after overdosing on heroin and

fentanyl. Plaintiff David Paulinski, as administrator of Madalyne's estate, filed a wrongful death

and survival action against employees of the Department of Children and Family Services (DCFS

defendants), in their individual capacities, and against Madalyne's mother, Christine.[1] The complaint alleged that Christine brought the drugs into her home where Madalyne and her younger siblings also resided.

¶ 3     The complaint further alleged that the DCFS defendants conducted improper investigations of neglect and abuse allegations at the home prior to Madalyne's death, and they failed to take "all reasonable steps to uncover and obviate dangers presented by child abuse and/or neglect." Plaintiff alleged that in providing services to Madalyne's family, the DCFS defendants failed to adhere to the professional standard of care of a child welfare employee. Plaintiff sought money damages.

¶ 4      The DCFS defendants filed a motion to dismiss the complaint pursuant to section 2-619.1 of the Code of Civil Procedure (Code) (735 ILCS 5/2-619.1 (West 2024)), arguing that plaintiff's claim was actually against the State of Illinois and, thus, the circuit court lacked jurisdiction to hear the case. Plaintiff responded that sovereign immunity did not apply where the DCFS defendants were required to hold a Direct Child Welfare Service Employee license (CWEL license), and as a result, they owed a duty to Madalyne independent of their employment with DCFS.

¶ 5     The circuit court held that sovereign immunity did not apply and denied the motion to dismiss. Relevant here, the court found that "because DCFS employees operate with CWEL licenses, they are beholden to a professional standard of care that exists regardless of their state employment." As support for its finding, the court cited *Griffin v. Poynter*, No. 20-cv-1427, 2022 WL 16836605 (C.D. Ill. Nov. 9, 2022), an unreported federal district court case.

---

[1]Plaintiff named DCFS employee Johnnie Gullet-Diaz as a defendant but failed to serve him. Here, "DCFS defendants," thus, refers to all party defendants except Gullet-Diaz.

¶ 6    The circuit court thereafter granted the DCFS defendants' motion to certify a question for interlocutory review under Illinois Supreme Court Rule 308 (eff. Oct. 1, 2019). This court granted the DCFS defendants' application for leave to appeal the following certified question:

> "Whether the statutory immunity provided in the State Lawsuit Immunity Act, 745 ILCS 5, giving exclusive jurisdiction over actions against the State to the Illinois Court of Claims, applies to cases alleging state law claims against DCFS employees based on their work for DCFS when those employees hold a Child Welfare Employee License, so as to bar jurisdiction of the Circuit Courts of the State of Illinois."

¶ 7                                    II. ANALYSIS

¶ 8    Rule 308 allows a trial court to make an otherwise interlocutory order immediately appealable if there is substantial ground for difference of opinion, and an appeal could materially advance the ultimate termination of the litigation. Ill. S. Ct. R. 308(a) (eff. Oct. 1, 2019). Our review in such an appeal is generally confined to the certified question. *De Bouse v. Bayer AG*, 235 Ill. 2d 544, 550 (2009). Since certified questions under Rule 308 are issues of law, our review is *de novo*. *Doe No. 2 v. Boy Scouts of America*, 2016 IL App (1st) 152406, ¶ 67.

¶ 9    The 1970 Constitution abolished sovereign immunity in Illinois "[e]xcept as the General Assembly may provide by law." Ill. Const. 1970, art. XIII, § 4. Pursuant to this authority, the General Assembly revived the doctrine by enacting the State Lawsuit Immunity Act (745 ILCS 5/0.01 *et seq.* (West 2024)). This statute provides that except as provided in the Court of Claims Act (705 ILCS 505/1 *et seq.* (West 2024)) and other specified statutes, "the State of Illinois shall not be made a defendant or party in any court." 745 ILCS 5/1 (West 2024). Relevant here, the Court of Claims Act states that the Court of Claims shall have exclusive jurisdiction to hear and determine "[a]ll claims against the State founded upon any law of the State of Illinois or upon any

regulation adopted thereunder by an executive or administrative officer or agency." 705 ILCS 505/8(a) (West 2024). Accordingly, the circuit court has no jurisdiction to hear and determine claims against the State.

¶ 10    Although plaintiff filed his claim against the DCFS defendants in their individual capacities, rather than as state employees, sovereign immunity may still apply. The circuit court lacks jurisdiction to hear the claim if the State of Illinois is "the party vitally interested," and thus, the claim is actually against the State itself. (Internal quotation marks omitted.) *Healy v. Vaupel*, 133 Ill. 2d 295, 308 (1990). In general, courts consider a claim based on an employee's actions as one against the State if the employee acted within his or her scope of authority and the challenged acts were within the employee's normal and official functions. *Id.* at 309.

¶ 11    There are two recognized exceptions to this general rule. First, "when a state officer performs illegally or purports to act under an unconstitutional act or under authority which he does not have, the officer's conduct is not regarded as the conduct of the State." *Leetaru v. Board of Trustees of the University of Illinois*, 2015 IL 117485, ¶ 46. Second, sovereign immunity does not apply if "the employee is charged with breaching a duty imposed on him *independently* of his State employment." (Emphasis in original.) *Currie v. Lao*, 148 Ill. 2d 151, 159 (1992).

¶ 12    The question certified for appeal asks whether sovereign immunity applies where "the claims against DCFS employees are based on their work for DCFS" and "those employees hold a Child Welfare Employee License ***." The circuit court below reasoned that sovereign immunity did not apply "because DCFS employees operate with CWEL licenses, [and thus] they are beholden to a professional standard of care that exists regardless of their state employment." To answer the certified question, we must determine whether the employees' CWEL license provides an independent source of duty outside of their employment so that the second exception applies to

preclude sovereign immunity.

¶ 13    The circuit court cited to *Griffin*, which found that the DCFS employees in that case "had a duty of professional conduct through their CWEL licensing standards \*\*\* and not solely by virtue of their State employment." *Griffin*, 2022 WL 16836605, at \*4. *Griffin*, however, relied primarily on *Currie* and *Healy*, cases that did not consider licensure as a state employee's source of duty. It is also notable that another federal case from the same district, *Williams v. Haleighs Hope, Inc.*, No. 22-cv-3090, 2025 WL 777637 (C.D. Ill. Mar. 11, 2025), declined to follow *Griffin*. Nonetheless, lower federal court decisions are not binding on this court, especially where the issue involves a matter of state law. *State Bank of Cherry v. CGB Enterprises, Inc.*, 2013 IL 113836, ¶ 34.

¶ 14    On the subject of professional licensure and duty, we find *Jinkins v. Lee*, 209 Ill. 2d 320 (2004) instructive. In that case, George Jinkins was found face down in a puddle of muddy water "with his pants down." *Id.* at 322. After he tried to run in front of a car, he was taken to Christ Hospital, which was a private hospital. Dr. Daniel Sachs treated Jinkins in the emergency room and diagnosed him with acute psychosis and suicidal behavior. Jinkins's blood alcohol content was 0.203, and he tested positive for marijuana. Dr. Sachs planned to have Jinkins evaluated and potentially admitted by a psychiatrist. *Id.*

¶ 15    While staying overnight at Christ Hospital, Jinkins became disruptive and tried to escape. *Id.* at 324. Later that morning, he was transferred in restraints to Madden Center, a state mental health care facility operated by the Illinois Department of Human Services. At Madden, Dr. Choong Lee, a board-certified psychiatrist, examined Jinkins. *Id.* Paulette Medlin a licensed clinical counselor, assisted Dr. Lee. *Id.* at 325. After the examination, Dr. Lee decided not to admit Jinkins because he was not " 'certifiable.' " *Id.* at 326. He believed that drugs and alcohol were

the primary causes of Jinkins' psychiatric symptoms. Jinkins left the Madden Center with his mother and his wife, but soon after arriving home, he shot himself in the head. *Id.*

¶ 16    Jinkins' wife filed an action alleging wrongful death, naming as defendants Dr. Lee and Medlin, among others. *Id.* at 327. The complaint alleged that both Lee and Medlin breached their respective duty of care to use their professional knowledge and skill when treating patients. *Id.* at 328. In a deposition, an expert witness testified that the standard of care applicable to private and state hospitals was identical. *Id.* at 327. The circuit court granted the defendants' motion to dismiss, finding that sovereign immunity barred the action. The appellate court reversed, ruling that the duty owed by Dr. Lee and Medlin existed independently of their state employment so that sovereign immunity did not apply. *Id.* at 328.

¶ 17    On appeal to the supreme court, the court utilized the "source-of-the-duty test." *Id.* at 333. The court noted that the mere fact Dr. Lee was employed by the State was not dispositive when considering whether the action was against the State. *Id.* Rather, it found that Dr. Lee "was not performing a uniquely governmental function" when he treated Jinkins. *Id.* at 335. The supreme court held that Dr. Lee's duty to exercise reasonable care when treating patients was "derived from [his] status as a licensed physician" and not dependent on his employment by the State. *Id.* at 336. In other words, "the duties inherent in the doctor-patient relationship emanate from the standards imposed by the profession itself" and not from Dr. Lee's government employment. *Id.* As such, sovereign immunity did not preclude the circuit court from hearing the claim. *Id.* at 340.

¶ 18    Although the supreme court determined that sovereign immunity did not apply because Dr. Lee's duty of reasonable care arose from the fact that he was a licensed physician, it did not hold that all licensed professionals who work for the state are similarly excluded. Instead, the court emphasized the fact that licensed physicians are obligated to treat all patients with the same

standard of care, regardless of whether they are in a state hospital or a private hospital. Significant here, the court also found that while Dr. Lee treated Jinkins in a state hospital, he was not performing a uniquely governmental function when doing so.

¶ 19    Unlike Dr. Lee, the licensed DCFS defendants in this case were performing a uniquely governmental function. Section 7.3(a) of the Abused and Neglected Child Reporting Act provides that DCFS "shall be the *sole* agency responsible for receiving and investigating reports of child abuse or neglect made under this Act." (Emphasis added.) 325 ILCS 5/7.3(a) (West 2024). To fulfill its responsibility, DCFS "shall be capable of receiving reports of suspected child abuse or neglect 24 hours a day, 7 days a week." *Id.* § 7.4(a). Upon receiving a report, DCFS "shall determine whether to conduct a family assessment or an investigation as appropriate to prevent or provide a remedy for child abuse or neglect." *Id.* § 7.4(a-5).

¶ 20    DCFS also developed and implemented the CWEL license, which "all child protective investigators and supervisors and child welfare specialists and supervisors employed by [DCFS] or its contractors shall *** obtain and maintain." 20 ILCS 505/5c(a) (West 2024). Relevant here, the CWEL license is "*solely* for the purpose of employment with the Department or with a POS agency or a temporary services agency as a direct child welfare service employee." (Emphasis added.) 89 Ill. Adm. Code § 412.40(f)(4) (2015). A CWEL license holder cannot "represent herself or himself as a licensed social worker or licensed clinical social worker as defined under the Clinical Social Work and Social Work Practice Act [225 ILCS 20]." *Id.*

¶ 21    It is true that the DCFS defendants were required to possess a CWEL license and that certain knowledge and skills are associated with maintaining that license. It does not follow, however, that the license created an independent duty on the part of these defendants to take reasonable care when conducting investigations of child neglect and abuse. Unlike Dr. Lee in

*Jinkins*, who had an independent duty as a licensed physician to exercise reasonable care in treating patients whether or not they were in a state hospital, the DCFS defendants had no independent duty outside of their government employment to investigate child abuse/neglect cases. Moreover, DCFS developed the CWEL license solely for the purpose of employment with DCFS. It is only by virtue of their employment at DCFS that these licensed defendants had an obligation to investigate Madalyne's case according to certain articulated standards.

¶ 22     When determining whether sovereign immunity applies, courts must also consider whether a judgment in plaintiff's favor would operate to control the actions of the state or subject it to liability. *Currie*, 148 Ill. 2d at 158. Here, DCFS is the sole agency charged with investigating reports of child abuse and neglect. Therefore, it is solely responsible for the development of "the safety-based child welfare intervention system, training curriculum, method for demonstration of proficiency in application of the safety-based child welfare intervention system, and method for evaluation of the reliability and validity of the safety-based child welfare intervention system." 20 ILCS 505/21(e)(4) (West 2024). DCFS is also the agency that developed "guidelines or criteria for educational and professional requirements and a curriculum in child protection investigation and child welfare services." 225 ILCS 420/4 (West 2024).

¶ 23     Plaintiff alleged that CWEL license holders have a duty to take "all reasonable steps to uncover and obviate dangers presented by child abuse and/or neglect" and that the DCFS defendants breached that duty when they conducted improper investigations of neglect and abuse allegations prior to Madalyne's death. Given the fact that DCFS is the sole agency responsible for investigating reports of child abuse and neglect and, to that end, DCFS has set forth educational requirements and professional standards for employees who work as investigators, a judgment in plaintiff's favor could operate to control the actions of the State or subject it to liability. We find

that the action is one against the State and sovereign immunity applies. *Currie*, 148 Ill. 2d at 158.

¶ 24                                III. CONCLUSION

¶ 25    For the foregoing reasons, we answer the certified question in the affirmative and find that the circuit court lacked jurisdiction to hear plaintiff's claim against the DCFS defendants. We remand the cause to the circuit court for dismissal of plaintiff's complaint in accordance with this ruling.

¶ 26    Certified question answered; cause remanded.

*Paulinski v. Link*, 2026 IL App (1st) 250326

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 2024-L-241; the Hon. Maire Dempsey, Judge, presiding. |
| **Attorneys for Appellant:** | Kwame Raoul, Attorney General, of Chicago (Jane Elinor Notz, Solicitor General, and Leigh J. Jahnig, Assistant Attorney General, of counsel), for appellants. |
| **Attorneys for Appellee:** | Thomas Stewart, The Deratany Law Firm LLC, of Chicago, for appellee. |